**In re STONEGATE SECURITY SERVICES, LTD.**

**Joseph A. TANTILLA and Ramm Industries, Inc., Appellants,**

v.

**STONEGATE SECURITY SERVICES, LTD., Appellee.**

**Nos. 84C3254, 83B12047.**

United States District Court, N.D. Illinois, E.D.

Jan. 31, 1986.

---

Michael P. Cascino, Chicago, Ill., for appellants.

Howard L. Adelman, Chad H. Gettleman, Chicago, Ill., for appellee.

## MEMORANDUM OPINION

GRADY, District Judge.

In this case, a creditor and its president appeal the bankruptcy court's order imposing fee sanctions. For the reasons given below, the order is vacated, and this case is remanded for further findings of fact.

## FACTS

Sometime before September 30, 1983, appellant Ramm Industries Co. ("Ramm") sold goods to appellee Stonegate Security Services, Ltd. ("Stonegate"). Stonegate did not make payment when due, and appellant Joseph Tantilla, president of Ramm, caused a truck to be parked outside Stonegate's business premises. On the front, side and rear of the truck was painted "Stonegate Auto Alarms does not pay supplier"; "Stonegate Auto Alarms does *not* pay suppliers"; and "Crime does not pay, Stonegate Auto Alarms the same way"

Ramm then sued Stonegate in state court for the money owed to it. The case ended in an agreement: Ramm agreed to remove the truck, and Stonegate agreed to pay Ramm the money owed. Stonegate made its initial installment payment to Ramm, and Ramm removed the truck. Stonegate then missed its subsequent installment payment, and the truck returned.

On September 30, 1983, Ramm, along with other of Stonegate's creditors, caused an involuntary petition under Chapter 11 of the Bankruptcy Code to be filed against Stonegate. On October 21, 1983, Stonegate consented to the entry of an order for relief under Chapter 11, and thereafter continued to operate its business as a debtor-in-possession.

Ramm's truck remained in front of Stonegate's business premises both before and after the filing of the bankruptcy petition. On October 28, 1983, Stonegate filed a motion for the issuance of a rule to show cause why Ramm and Tantilla should not be held in contempt of court for violation of 11 U.S.C. § 362(a)(6), which provides:

[A] petition filed under ... this title operates as a stay, applicable to all entities, of—

\* \* \* \* \* \*

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

A hearing was held on Ramm's motion on November 17, 1983. Stonegate began the hearing by arguing that Ramm's action constituted harassment to coerce payment in violation of § 362, and that the truck was adversely affecting Stonegate's busi-

ness. Ramm admitted that it was causing the truck to be parked near Stonegate's premises, then attempted to argue that Ramm was not harassing Stonegate, but merely stating a fact and exercising its First Amendment rights. The bankruptcy judge refused to take evidence on whether Ramm's purpose was in fact to harass, and did not address Ramm's First Amendment argument. Instead, he found that the admitted conduct constituted a violation of § 362(a)(6). Ramm then agreed to remove the truck, in order to avoid having any citation of contempt entered against Ramm or Tantilla. *See* Brief and Argument for Appellant, Fifth of unnumbered exhibits, transcript of proceedings at 10. Stonegate stated that it wanted an order entered directing the truck to be removed, and, if such an order were entered, it would not seek a contempt order. *Id.* at 13. The judge agreed to enter such an order. *Id.* at 17.

On that same day or shortly before, Stonegate also filed a motion for fees and costs against Ramm and Tantilla for its expenses in seeking removal of the truck. At the November 17, 1983, hearing, Ramm and Tantilla asked for time to respond, which was granted, and a hearing on the fee motion was set for January 19, 1984. Ramm and Tantilla apparently never responded to the motion and did not appear on January 19. The bankruptcy judge took the fee motion under advisement, and, on February 28, 1984, filed a memorandum and entered an order granting Stonegate fees. In the memorandum, the bankruptcy judge stated that he had found on November 17, 1984, that the presence of the truck violated § 362(a)(6), and that Ramm and Tantilla knew that they were in violation of the statute because Ramm had joined in the filing of the involuntary petition against Stonegate. Brief and Argument for Appellant, Tenth of unnumbered exhibits at 2. The judge stated that there was no doubt that Ramm and Tantilla were guilty of contemptuous conduct in violating the automatic stay, and that fees had to be assessed in order to preserve the "sanctity" of the stay. *Id.* Ramm and Tantilla then appealed the February 28, 1984, order.

## DISCUSSION

### Issues on Appeal

Ramm and Tantilla raise several arguments on appeal, including the First Amendment defense made before the bankruptcy judge at the November 17 hearing. Stonegate contends that since Ramm and Tantilla did not timely appeal the finding of a violation of § 362, but only the February 28, 1984, order assessing fees, their appeal must be limited to the question of whether fee assessment was an abuse of discretion.

We disagree. First, there is no evidence of an order actually having been entered on November 17 finding Ramm and Tantilla in violation of § 362. The only order docketed relating to the November 17 hearing states that Stonegate's "motion" was continued until January 19. The transcript of the November 17 hearing indicates that Stonegate was to have prepared an order for the judge to sign, and copies, unsigned, of the proposed order have been submitted on this appeal. Ramm and Tantilla claim that they attempted to appeal the November 17 ruling, but were not permitted to do so because no signed order had been entered. They state that they finally had the judge sign the November 17 order on December 16, but no such order is on file. Therefore, it appears that Ramm and Tantilla never had the opportunity to appeal until after the February 28, 1984, order was entered.

Second, even if an order was entered on or about November 17, it does not appear that this order was final and appealable. While the bankruptcy judge found that Ramm and Tantilla had violated § 362, he expressly did not find them in contempt, because they agreed to remove the truck, and Stonegate agreed not to pursue its contempt motion. A final, unfavorable ruling was not entered against Ramm and Tantilla until the fee sanction.

Third, even if a November 17 order was final and appealable, in order for us to determine whether the bankruptcy judge should have assessed fees pursuant to the inherent power of the court, we must determine whether Ramm and Tantilla had a reasonable basis for resisting the contempt

order, or, putting it another way, whether their conduct in placing the truck in front of Stonegate's premises was defensible. *See Alyeska Pipeline Service v. Wilderness Society,* 421 U.S. 240, 258, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975) (fees may be assessed for "willful" disobedience of court order); *In re Hammett,* 28 B.R. 1012, 1016 (E.D.Penn.1983) (where party's argument is not without substance or not based on totally specious reading of statute, disobedience is not willful and fees should not be assessed). Therefore, to rule on the February 28 order, we must look to the merits of Ramm and Tantilla's defenses and make an evaluation similar, if not identical, to the one we would make if we were ruling on the November 17 order.

Therefore, we will examine the merits of Ramm and Tantilla's First Amendment defense, a defense which the bankruptcy judge summarily rejected and which Stonegate chose not to brief on appeal.

**First Amendment**

Section 362(a)(6) is designed to prohibit a creditor from attempting to collect a pre-petition debt in any manner, including harassment. *See Wilson v. Harris Trust and Savings Bank,* No. 82 C 2960, Memorandum Op. at 5 n. 3 (N.D.Ill. Nov. 23, 1983) (Grady, J.), *citing* H.Rep. No. 95–595, 95th Cong., 1st Sess (1977) 340–3; S.Rep. No. 95–989, 95th Cong., 2nd Sess. (1978) 49–51, *reprinted in* U.S.Code Cong. & Admin.News 1978, pp. 5787, 5836. For example, legislative history indicates that Congress intended § 362(a)(6) to prohibit creditors from evading the bankruptcy laws by encouraging debtors to pay their debts in spite of bankruptcy. *Id.* Therefore, it is clear that § 362 is designed to prohibit conduct which may include speech components.

■ The question we ask here is whether § 362 was intended to prohibit Tamm and Tantilla's conduct. If it would be unconstitutional to prohibit such conduct, then we assume that § 362 was not intend-

ed to have such an effect, since we construe laws to be constitutional if such a construction can reasonably be made. *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932).[1]

■ It is not unconstitutional to prohibit harassing conduct, even if that conduct involves verbal components. For example, 47 U.S.C. § 223 forbids obscene or harassing phone calls in the District of Columbia or in interstate or foreign communications. Section 1692d of Title 15 U.S.C. forbids debt collectors from engaging in harassing conduct in connection with collection of a debt. It is constitutional to prohibit such conduct, even though it involves speech, because (1) the speech is not highly protected; (2) the speech is "speech-plus," that is, it involves action beyond speech; and (3) countervailing interests, such as an individual's right to privacy, are involved. *See Gormley v. Director, Connecticut State Department of Adult Probation,* 449 U.S. 1023, 1023, 101 S.Ct. 591, 591, 66 L.Ed.2d 485 (1980) (White, J., dissenting from denial of certiorari petition) (state has interest in protecting citizens against unwarranted invasions of privacy, especially when unprotected speech is involved); *FCC v. Pacifica Foundation,* 438 U.S. 726, 749 n. 27, 98 S.Ct. 3026, 3040 n. 27, 57 L.Ed.2d 1073 (1978) (citing harassing phone calls as example of when right to privacy outweighs speech entitled to limited protection); *Giboney v. Empire Storage Co.,* 336 U.S. 490, 502, 69 S.Ct. 684, 690, 93 L.Ed. 834 (1949) (construing *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), as allowing prohibition of speech amounting to conduct); *Chaplinsky* (upholding statute prohibiting utterance of "fighting" words in public places); *Gormley v. Director, Connecticut State Department of Probation,* 632 F.2d 938 (2d Cir.), *cert. denied,* 449 U.S. 1023, 101 S.Ct. 591, 66 L.Ed.2d 485 (1980) (upholding statute prohibiting telephone harassment because such harassment involves conduct and intrudes on right to privacy).

---

1. Phrased differently, § 362 is not overbroad on its face because it clearly applies to conduct and not necessarily to protected speech; it can therefore be given a construction which removes the possibility of constitutional invalidity. *See Broaderick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973).

For example, certain types of coercive labor picketing can be regulated because they involve speech-plus and have an illegal purpose (thus giving the state a compelling interest outweighing protection of the speech). *See NAACP v. Claiborne Hardward Co.*, 458 U.S. 886, 912, 102 S.Ct. 3409, 3425, 73 L.Ed.2d 1215 (1982); *Carey v. Brown*, 447 U.S. 455, 470 (1980); *Giboney*, 336 U.S. at 498, 69 S.Ct. at 688.

■ Moreover, aside from these considerations, § 362 also involves protection of the judicial process itself. All bankruptcy statutes are designed to protect our economic system. Congress enacted Title 11 because it believed it is in our nations' interest to protect debtors and enable them to reorganize and continue their businesses. The function of the bankruptcy court in enforcing Title 11 is to facilitate effective reorganization when appropriate. Section 362 acts as an injunction against interference with the bankruptcy court's jurisdiction over petitioning debtors. Therefore, when a party violates § 362's automatic stay provision, he is harming not only the debtor, but the effectiveness of the bankruptcy court itself in fulfilling the role Congress designed for it. That is why the natural consequence of a § 362 violation is a contempt citation. Pure, otherwise protected speech could in appropriate circumstances result in a contempt finding because of this countervailing interest in protecting the judicial system. *See Wood v. Georgia*, 370 U.S. 375, 383, 82 S.Ct. 1364, 1369, 8 L.Ed.2d 569 (1962) (the right of courts to conduct business in untrammeled fashion lies at foundation of our system of government, and courts necessarily must possess the means of punishing contempt when conduct tends directly to prevent the discharge of their functions).

■ This does not mean, however, that the government may with impunity pass laws curtailing "harassing" speech. Statutes prohibiting verbal harassment must be written or at least construed to prohibit only that speech devoid of First Amend-

ment protection and subject to countervailing, compelling interests, such as privacy. *See Gormley*, 449 U.S. at 1023–24, 101 S.Ct. at 591–92 (White, J., dissenting from denial of certiorari petition); *Kramer v. Price*, 712 F.2d 174 (5th Cir.), *rehearing en banc granted*, 716 F.2d 284 (5th Cir.1983), *district court opinion aff'd*, 723 F.2d 1164 (5th Cir.1984) (en banc)[2] (holding Texas harassment statute unconstitutionally vague). While certain types of coercive group labor picketing can be regulated, *supra*, not all picketing may be forbidden. *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968); *Teamsters v. Vogt, Inc.*, 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347 (1957), and the First Amendment still strongly defends the "classic expressive gesture of the solitary picket." *See Grayned v. City of Rockford*, 408 U.S. 104, 119, 92 S.Ct. 2294, 2305, 33 L.Ed.2d 222 (1972). Even when interference with the judicial process is involved, courts must apply the stringent "clear and present danger" test: a sufficient liklihood of a substantive evil actually designed to impede the course of justice must be demonstrated to justify exercise of the contempt power. *Wood*, 370 U.S. at 389, 82 S.Ct. at 1372.

■ Therefore, in order for § 362 to constitutionally curtail "harassing" speech, the speech must be truly obstructive, that is, it must amount to conduct that seriously and effectively interferes with the judicial process itself—or presents a clear and present danger of doing so—and involves no or at least limited First Amendment interest. It is not enough that the behavior be "annoying," *see Gormley*, 449 U.S. at 1024, 101 S.Ct. at 591 (White, J., dissenting from denial of certiorari petition); *Kramer*, 712 F.2d at 177, or even that it has actual adverse effect on someone's business. *See Organization for a Better Austin v. Keefe*, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971). In *Keefe*, a real estate broker obtained an injunction prohibiting a civic organization from distributing litera-

---

**2.** After the Fifth Circuit agreed to rehear the appeal of the district court's decision finding the statute unconstitutional, Texas rewrote its stat-

ute, and the Fifth Circuit, en banc, decided to affirm the district court's opinion without approval or adoption.

ture in a town, on the grounds that these leaflets, critical of the broker's "blockbusting" and "panic peddling," invaded his right of privacy and were coercive and intimidating rather than informative. The Court vacated the injunction, finding that the fact that the broker's business may be harmed is not enough to permit prior restraint of the organization's speech.

Relying on *Keefe* and *Claiborne Hardware*, the Fifth Circuit recently vacated an injunction entered by a bankruptcy court pursuant to § 362. *Matter of National Service*, 742 F.2d 859 (5th Cir.1984). In *National Service*, one of the bankrupt's creditors was its advertising agency. The advertiser intended to add to the debtor's billboard advertisements slogans such as "Beware, this company does not pay its bills" and "Beware, this company is in bankruptcy." The bankruptcy court enjoined the posting as harassment violative of § 362. The Fifth Circuit held that the intended conduct involved pure, not commercial speech, because it most closely resembled a public service message, not a solicitation for business. The bankruptcy judge could not order a blanket prohibition on the creditor from disseminating its noncommercial message simply because the message was thought to be threatening to the debtor. The only effect this public criticism would have on the debtor is that consumers would learn of the bankruptcy, and the threat of this was insufficient to warrant use of a prior restraint on the advertiser's speech. *Id.* at 862.

■■■ Thus, in the absence of some language presenting a clear and present danger of some signifcant interference with the debtor's reorganization, or with the functions of the bankruptcy court, § 362 cannot prohibit public criticism. Here, unlike in *National Service*, the creditor was to a limited extent involved in speech-plus, in that he engaged in patrolling conduct, and the instant case involves a fee sanction as opposed to an injunction. But these differences are insignificant. The patrolling was the "classic expressive gesture of the solitary picket," and the bankruptcy judge's enforcement of § 362 was a form of prior restraint: § 362 was construed as a violated injunction. As in *National Service*, the language used did not present a clear and present danger of frustrating the reorganization in any degree and was therefore deserving of First Amendment protection. It did not involve solicitation of business, and, therefore, was not commercial speech deserving of only limited protection. In light of the protected nature of the speech, the limited "conduct" involved, and the lack of any showing of a damaging impact on a compelling, countervailing interest, it is clear that Ramm and Tantilla's speech could not be constitutionally prohibited under § 362, and the bankruptcy court's imposition of fees must be vacated.

The bankruptcy judge took no evidence on countervailing interests, such as the damage done to Stonegate's business or the impact of Ramm and Tantilla's criticism on the court's ability to function. *See* Brief and Argument for Appellant, Fifth of unnumbered exhibits, Transcript at 12. But even if Ramm and Tantilla's signs did have a serious adverse impact on Stonegate's business, in light of *National Service* and *Keefe*, we believe that this would not be enough to curtail their protected speech. We also do not believe this protected public criticism presents a sufficient clear and present danger of interference with the judicial process to permit its curtailment.[3]

■■■ We must still remand this case instead of simply reversing it, however, be-

---

**3.** The bankruptcy judge also failed to take evidence and make factual findings as to whether Ramm and Tantilla intended to disrupt Stonegate's business and the bankruptcy proceedings. Instead, the court seems to have assumed that this was their intention. *See* Brief and Argument for Appellant, fifth of unnumbered exhibits, Transcript at 9, 11, 12, 13.

As the Supreme Court indicated in *Wood*, 370 U.S. at 389, 82 S.Ct. at 1372 *see supra* at 1019,

there are two prongs to the clear and present danger test. One is that the conduct have a substantial likelihood of causing a substantive evil Congress has a right to prevent. We discussed this prong *supra* at 1019–1021, and we concluded that the conduct involved here did not carry with it such a sufficient likelihood of that kind of harm.

The other prong is that the speaker intend that his conduct cause the prohibited harm.

cause in its opening argument in the November 17 hearing, Stonegate alluded to physical obstruction caused by the truck. Since the bankruptcy judge found a § 362 violation without hearing evidence as to any physical obstruction by the truck, we have no facts before us regarding this issue. If the truck by its physical presence was in fact impeding access to Stonegate's premises, then this obstruction would be pure conduct, with no speech protection, and could be violative of § 362. A fee award could therefore be justified. Accordingly, we remand this case to the bankruptcy court to determine whether the truck did obstruct access to Stonegate's premises, and, if so, whether a fee assessment against Ramm and Tantilla is warranted.

**CONCLUSION**

The bankruptcy court's order of February 28, 1984, imposing fee sanctions on Ramm and Tantilla is vacated, and this case is remanded to the bankruptcy court for further proceedings in accordance with this opinion.

See Wood, 370 U.S. at 389, 82 S.Ct. at 1372. See also *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969) (constitutional guarantee of free speech does not permit prohibition of advocacy except where such advocacy is *directed* to inciting or producing imminent lawless action *and* is likely to incite or produce such action) (emphasis supplied). If Ramm and Tantilla parked the truck in front of Stonegate's premises simply to vent their anger and frustration or to publicize their low opinion of Stonegate, without specifically intending to frustrate the reorganization, such conduct would be protected. Given the fact that Ramm caused the bankruptcy petition to be filed, it is not self-evident that it wanted to impede the bankruptcy proceeding.