In re SECHUAN CITY, INC. d/b/a Sechuan Garden Restaurant, Debtor.

SECHUAN CITY, INC. d/b/a Sechuan Garden Restaurant, Plaintiff,

v.

NORTH AMERICAN MOTOR INNS, INC., Jose Garcia and Richard Melius, Defendants.

Bankruptcy No. 88–12967F.
Adv. No. 88–2065F.

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 6, 1989.

Jerome R. Balka, Philadelphia, Pa., for plaintiff, Sechuan City, Inc. d/b/a Sechuan Garden Restaurant.

Athena M. Dooley, Dessen, Moses & Sheinoff, Philadelphia, Pa., for defendants, North American Motor Inns, Inc., Jose Garcia and Richard Milles.

Anthony R. Barone, Philadelphia, Pa., Trustee.

## OPINION

BRUCE I. FOX, Bankruptcy Judge:

The debtor has initiated an adversary proceeding against North American Motor Inns, Inc. (Hotel), its principal (Mr. Richard Melius)[1] and an employee (Jose Garcia) alleging that defendants violated the automatic stay by attempting to collect a prepetition debt. Defendants allege that their activities did not violate any provision of § 362(a) and, alternatively, that their conduct was protected by the First Amendment. The Hotel also seeks a set-off for unpaid postpetition rent.

### I.

After hearing the testimony and reviewing the documentary evidence and pleadings, which were also offered into evidence to the extent they contain admissions, I make the following factual findings pursuant to Bankr.R. 7052.

1. On April 18, 1984, North American Motor Inns, Inc. entered into a leasehold agreement with Messrs. Fu G. Chu, Kosit Lore and Kwong Y. Ng, which allowed them to lease space inside the lessor Hotel and operate a restaurant. During the period in question the monthly rental was $5,000.00 plus utilities.

2. Subsequent to April 18, 1984, this lease was assigned to the plaintiff corporation; Messrs. Ng and Chu were principals in the debtor corporation.[2]

3. In July 1988 a dispute arose between lessor and lessee as to rental payments, particularly the utility components. In August 1988, the debtor made no rental payments whatsoever.

4. On August 24, 1988, the debtor filed a voluntary petition in bankruptcy under chapter 11. A copy of the filed petition was hand-delivered to the lessor and a letter was sent that same day to defendant Garcia, manager of the defendant Hotel, also informing him of the bankruptcy filing and of the automatic stay. (Exhibit P–5.)

5. The debtor operated a Chinese restaurant called the Sechuan Garden inside the hotel known as the North American

---

1. By agreement, the complaint was amended at trial to reflect the correct spelling of Mr. Melius.

2. Although no evidence was presented regarding the assignment, defendants conceded that the debtor was in fact the lessee prior to filing for bankruptcy. *See also* Defendants' Proposed Finding of Fact # 35.

Motor Inn. Access to the restaurant was through the hotel lobby. This lobby also contained the defendant hotel's registration desk and bar. A prepetition arrangement existed between the hotel and the debtor whereby any patron of the debtor who ordered an alcoholic drink was served, at his or her restaurant table, a drink prepared by the hotel bar.

6. On August 26 or 27, 1988 when defendant Garcia, the hotel manager, learned of the debtor's bankruptcy filing he telephoned his employer, defendant Melius (the owner of the Hotel), with that information.

7. Mr. Melius instructed Mr. Garcia that various signs should be posted immediately at all hotel entrances, in the hotel lobby, and immediately outside the restaurant doors located in the lobby.

8. The following four signs were immediately posted at these locations:

(a) A photocopy of the debtor's bankruptcy petition copied on 8½″ × 11″ red paper with the word "NOTICE" in bold black ink across the top (Exhibit P–1).

(b) A large sign which read (in capital letters):
NOTICE. PLEASE DON'T PATRONIZE THE SECHUAN GARDEN. THIS RESTAURANT UNFAIR TO MANAGEMENT—IT DOES NOT PAY IT'S [sic] BILLS
THANK YOU
N.A.M.I. MANAGEMENT
(Exhibit P–2).

(c) A smaller sign reading (also in capitals):
THE TENANT HAS DISHONORED ITS OBLIGATION FOR PAYMENT TO THE LANDLORD

(d) And a final sign reading, in capitals:
NOTICE
NO ALCOHOLIC BEVERAGES ARE ALLOWED TO BE CONSUMED IN THE RESTAURANT AREA UNDER PENALTY OF LAW
THANKS
N.A.M.I. MGMT.

9. The language of each sign was discussed, in advance, between Mr. Garcia and Mr. Melius as was the use of colored paper as the background for the copies of the posted bankruptcy petition.

10. The debtor, through one of its principals, immediately requested that defendants remove the signs. Defendants refused. Some signs were subsequently torn down by the debtor's principals and were replaced by defendants.

11. In removing certain signs, Mr. Chu revealed a weapon to a hotel employee. The employee then called police who, upon arrival at the hotel, took no action as Mr. Chu had a license for the weapon.

12. On or about September 15, 1988 all signs were removed by defendants from every location.

13. The debtor testified that it suffered a loss of business due to the defendants' signs. Such testimony was credible. Customers were seen leaving the hotel lobby after noticing the signs. Gross weekly revenues fell markedly between July 1988 and September 1988. After considering the evidence presented, I conclude that plaintiff has demonstrated damages of $1,000.00 per week for the three weeks during which the signs remained posted.

14. Both Mr. Garcia and another employee, Mr. Joshua Kunkel, testified that the defendants' intent in posting these signs was to inform the public about the debtor's bankruptcy filing and to "shame" and "embarrass" the debtor into paying its bills. As there was no postpetition rent yet due when the signs were first posted, the bills for which defendants sought payment were prepetition debts.[3] I find, then, that any desire on the part of defendants to

---

**3.** In their posttrial submissions, defendants argue that the debtor's prepetition payment history demonstrated that postpetition payments would not be made. While it is true that, in fact, the debtor did not make its September, October or November 1988 rental payments, such a failure was not certain from its prepetition record, in which it failed to make payments in only two months out of more than four years. Moreover, the debtor contends that its failure to pay postpetition rent was connected to the defendants' signs and concommitant loss of business.

inform the public of the debtor's bankruptcy filing was connected to their desire to pressure the debtor into making payment on its prepetition rent owing to the lessor.

15. The testimony of Mr. Garcia, that defendants never sought to harm the debtor's business, is contradicted by the sign requesting that the public not patronize the restaurant.

16. After the debtor's bankruptcy filing, the debtor failed to make postpetition rental payments for September, October, and November, 1988. The defendant lessor was granted relief from the automatic stay in order to pursue a state court eviction action.

17. This chapter 11 bankruptcy case was converted to chapter 7 on motion of the U.S. Trustee on December 8, 1988 and the U.S. Trustee subsequently appointed Mr. Anthony Barone as interim chapter 7 trustee.

18. Defendant Garcia acted at the express direction of defendant Melius.

## II.

Based upon these factual findings, I reach the following legal conclusions:

1. The conduct of defendants was designed to coerce payment of the lessor's prepetition claim from the debtor and so violated 11 U.S.C. § 362(a)(6).

2. This conduct was not protected by the First Amendment.

3. No punitive damages are warranted.

4. An award of damages pursuant to 11 U.S.C. § 362(a) is warranted.

5. The award of damages shall be in favor of the interim chapter 7 trustee.

6. Defendant Garcia is not personally liable for the actions taken by defendants.

## III.

■ The first question which must be addressed is whether the conduct of the defendants in posting the various signs throughout the hotel lobby, coupled with the hotel's decision not to allow alcoholic drinks to be served, violated the automatic stay established by 11 U.S.C. § 362(a). If not, there is no need to address the constitutional issue raised by defendants. *See DeBartolo Corp. v. Florida Gulf Court Bldg. & Constr. Trades Council*, 485 U.S. 568, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988). The debtor argues that the conduct of defendants violated 11 U.S.C. § 362(a)(3), (6).

In general, § 362(a) represents an expansion and codification of the concept that the filing of bankruptcy should create "a stay against creditors from collecting their claims against the debtor and his property from and after the filing of a [bankruptcy] petition...." Kennedy, *Automatic Stays Under the New Bankruptcy Law*, 12 Univ. Mich.J. of Law Reform 3 (1978). The need for a stay has long been recognized. *See, e.g., Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *Mueller v. Nugent*, 184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405 (1902).

The dual purpose of the stay was well expressed by the legislative history surrounding the passage of § 362(a):

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, *all harassment*, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan or simply to be relieved of the financial pressures that drove him into bankruptcy.
>
> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors....

H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787 (emphasis added). *Accord, e.g., H & H Beverage Distributors, Inc. v. Department of Revenue*, 850 F.2d 165, 166 (3d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 560, 102 L.Ed.2d 586 (1988); *Association of St. Croix Condominium*

*Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir.1982).

11 U.S.C. § 362(a)(6) specifically enjoins: any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under· this title; ....

The language of this subsection is "very broad," *Morgan Guaranty Trust Co. v. American Sav. & Loan Assoc.*, 804 F.2d 1487, 1491 (9th Cir.1986), *cert. denied*, 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987), and is designed to prevent creditor coercion and harassment of the debtor. *Id.* *See also* 2 *Collier on Bankruptcy*, ¶ 362.05[6] at 362–41 (15th ed. 1988) (footnote omitted):

Paragraph 6 is intended to prevent creditor harassment of the debtor in attempting to collect pre-petition debts. The conduct prohibited ranges from that of an informal nature, such as by telephone contact or by dunning letters to more formal judicial and administrative proceedings that are also stayed under paragraph (1).

Given the important functions served by the automatic stay, the provisions of subsection (a)(6) have been broadly construed. *See, e.g., Morgan Guaranty Trust Co.*, 804 F.2d at 1491; *In re Aponte*, 82 B.R. 738 (Bankr.E.D.Pa.1988) (lessor violated automatic stay by having utility services disconnected); *In re Continental Airlines Corp.*, 43 B.R. 127 (Bankr.S.D.Tex.1984) (Airline Pilots Association would be enjoined from scheduling 317 disciplinary hearings against the debtor, all to be heard at the same time); *In re Olson*, 38 B.R. 515 (Bankr.N.D.Iowa 1984)[4] (letter stating refusal to provide future medical services unless prepetition debt was paid violated stay); *In re DeLay*, 25 B.R. 898, 901 (Bankr.S.D.Mo.1982), *mod. on other grounds*, 48 B.R. 282 (W.D.Mo.1984); *In re Reed*, 11 B.R. 258 (Bankr.D.Utah 1981) (creditors violated automatic stay by dumping garbage on the debtor's lawn and driveway). *See also In re Promower, Inc.*, 56 B.R. 619 (Bankr.D.Md.1986), *aff'd*, 74 B.R. 49 (D.Md.1987) (lessor violated automatic stay by barricading debtor's premises). There has been an attempt, though, to distinguish between "mere requests for payment" that have no indicia of coercion or harassment, and conduct of a creditor designed to coerce payment of a prepetition debt. *Morgan Guaranty Trust Co.*, 804 F.2d at 1491, n. 4.

In *In re Brown*, 851 F.2d 81, 84 (3d Cir.1988) the Court of Appeals upheld the bankruptcy court conclusion, as not clearly erroneous, that a letter sent to a debtor stating that no future loans would be made unless a prepetition debt was reaffirmed did not violate the automatic stay. The bankruptcy court had determined that the letter was only a communication of credit union policy sent without any purpose to collect a prepetition debt. Such communication of policy was deemed informative and not coercive.

Obviously, the *Brown* decision instructs that not every action taken by creditors toward the debtor results in a violation of the bankruptcy stay. Nonetheless, the band of permitted activities is narrow, given the broad language utilized by Congress in the catch-all provision of § 362(a)(6) and the purposes behind the stay.

Here, I conclude that the Hotel and its principal, Richard Melius, undertook a studied effort to coerce payment of the lessor's prepetition claim. Defendants' contention that they simply sought to inform the public of the debtor's bankruptcy filing and not to harm the debtor is belied by the striking appearance of the signs, the signs' content (requesting the debtor's restaurant not be patronized), by the testimony which conceded that the defendants' conduct was intended to shame and embarrass, and by the defendants' attempt to discourage customers by refusing the service of alcoholic drinks. While the lessor did not bring suit against the debtor, its actions were designed to place the debtor in a position of either paying the lessor's prepetition

---

**4.** *See In re Brown*, 851 F.2d 81, 84 n. 5 (3d Cir.1988) distinguishing *Olson* by emphasizing the bankruptcy court finding in the latter case that the letter was sent to coerce payment.

claim [5] or losing business due to defendants' actions. Such a choice runs counter to the purpose of § 362(a).[6]

## IV.

■ Having concluded that defendants Hotel and Melius violated 11 U.S.C. § 362(a)(6), I must next turn to defendants' First Amendment defense.[7] Quite plainly, defendants contend that their actions constituted protected speech which can be neither punished nor enjoined by the Bankruptcy Code. Thus, the question becomes whether there is conduct proscribed by § 362(a)(6) which is protected by the First Amendment. For the following reasons, I conclude that there is no overlap.[8]

The Supreme Court has recognized that the extent of First Amendment protection afforded to speech varies with the type of speech in question. For example:

> pure commercial speech which does "no more than propose a commercial transaction".... receives a limited form of First Amendment protection so long as it concerns a lawful activity and is not misleading or fraudulent. Once it is determined that the First Amendment applies to the peculiar kind of commercial speech at issue, then the speech may be restricted only if the government's interest in doing

so is substantial, the restrictions directly advance the government's asserted interests, and the restrictions are no more extensive than necessary to serve the interest.

*Posadas De Puerto Rico Associates v. Tourism Company of Puerto Rico,* 478 U.S. 328, 106 S.Ct. 2968, 2976, 92 L.Ed.2d 266 (1986). *Accord, e.g., Shapero v. Kentucky Bar Assoc.,* —— U.S. ——, 108 S.Ct. 1916, 1927, 100 L.Ed.2d 475 (1988) (O'Connor, J. dissenting); *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980).

In *Matter of National Service Corp.,* 742 F.2d 859, 862 (5th Cir.1984), the Fifth Circuit concluded that the public advertising of the fact that a company was in bankruptcy and not paying its bills did not constitute commercial speech but rather was speech entitled to greater constitutional protection. In this instance, I need not decide whether the posting of the instant signs should be classified as commercial speech or more protected speech.[9] Regardless of whether defendants' speech was purely commercial, it certainly falls within the range of speech less stringently protected by the First Amendment than other types:

> Attorney General, certifying that this proceeding draws into question the constitutionality of 11 U.S.C. § 362, and allowing the United States the opportunity to intervene in this proceeding. The Attorney General has not done so.

---

**5.** Defendants' assertion that they were concerned only with the lessor's postpetition claim for rent is undercut by the lack of any such claim when these activities began. Thus, I am not faced with an attempt to collect a postpetition claim which would be outside the reach of § 362(a). *See Taylor v. First Federal Sav. & Loan Assoc. of Monessen,* 843 F.2d 153, 154 (3d Cir.1988).

**6.** Defendants acknowledge that they "may have technically violated the stay" by their conduct. (Defendants' proposed Conclusion of Law # 8, at 6.)

**7.** Surprisingly, there are few reported decisions referring to the interplay between the First Amendment and the bankruptcy stay. *See Matter of National Service Corp.,* 742 F.2d 859 (5th Cir.1984); *In re Stonegate Security Services Ltd.,* 56 B.R. 1014 (N.D.Ill.1986). *See also In re Sambo's Restaurants, Inc.,* 38 B.R. 764 (9th Cir.B.A. P.1984).

**8.** Pursuant to 28 U.S.C. 2403(a), I issued an Order and Certification to the United States

**9.** As the Fifth Circuit noted, the Supreme Court has not articulated a clear definition of "commercial speech." In light of its holding in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985), discussed *infra,* referring to speech as falling within a spectrum rather than within discrete quanta, this ambiguity is less significant.

If the posting of these signs were characterized as commercial speech, this speech may not warrant constitutional protection because the signs may be misleading in that they accuse an entity exercising its statutory right to file for bankruptcy as being "unfair" and suggest that customers would violate state law by bringing their own alcoholic beverages into the restaurant. *Cf. In re Inslaw, Inc.,* 76 B.R. 224, 240 (Bankr.D.C.1987) (creditor's disparagement of debtor's product viewed as misleading).

We have long recognized that not all speech is of equal First Amendment importance. It is speech on " 'matters of public concern' " that is "at the heart of the First Amendment's protection."

. . . . .

In contrast, speech on matters of purely private concern is of less First Amendment concern....

While such speech is not totally unprotected by the First Amendment ... its protections are less stringent.

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–60, 105 S.Ct. 2939, 2944–46, 86 L.Ed.2d 593 (1985) (citations and footnotes omitted).

Examining the competing interests in the instant matter, I conclude that defendants' speech was neither political speech nor speech concerning public affairs. It was directed only toward potential customers of the debtor and with the clear aim of dissuading them from eating at this restaurant. These potential patrons were not individuals potentially affected by the debtor's filing who might find themselves with unwanted postpetition claims against a debtor-in-possession (as an administrative claimant, *e.g.*, a trade creditor, might). Defendants' speech, designed to recover its prepetition debt, "was speech solely in the individual interest of the speaker" and warranting no special First Amendment protection. *Dun & Bradstreet*, 472 U.S. at 762, 105 S.Ct. at 2947.

While the type of speech undertaken here falls within the lower spectrum of protected speech, the government interest addressed by section 362(a)(6) is significant. As I noted earlier, this subsection is part of the automatic stay, one of the cornerstones of bankruptcy law designed to provide the debtors with a breathing spell and to equalize treatment to all creditors. Section 362(a)(6) itself is intended to protect debtors from creditor coercion and harassment, for, absent such protection, reorganization or orderly liquidation may be difficult if not impossible. In fact, by damaging the debtor's business, the instant defendants may have contributed to the failure of this chapter 11 case and its conversion to chapter 7. In so doing, the lessor defendant may have injured itself as well as other creditors.

▮ Section 362(a)(6) does not reach the merely informative public statement that an individual or entity has filed a bankruptcy petition. *See Matter of National Service Corp.; In re Stonegate Security Services, Ltd.*, 56 B.R. 1014 (N.D.Ill.1986); *In re Northern Energy Products, Inc.*, 7 B.R. 473 (Bankr.D.Minn.1980) (Better Business Bureau cannot be enjoined from informing those who request information about the debtor's bankruptcy filing).[10] Nor does it ban non-coercive, non-harassing communications between the debtor and a creditor, so long as the communication does not represent an attempt by the creditor to collect a prepetition debt. *In re Brown.*[11]

Defendants rely heavily upon *In re Stonegate Security Services Ltd.* as supportive of their constitutional position. That decision held that parking a truck outside the debtor's business premises which carried signs stating that the debtor did not pay its suppliers was not, *per se*, a violation of § 362(a)(6) and that it may be constitutionally protected. The district court noted, though, that the bankruptcy court record contained no evidence concerning the following: whether the debtor's business was damaged; what the intent of the creditor was in placing the signs; whether the administration of the bankruptcy case was affected; or whether the business premises were obstructed. The *Stonegate* court implies, moreover, that

---

**10.** The bankruptcy court in *Northern Energy* does not discuss the applicability of § 362(a) to a non-creditor. *Cf. Taylor v. First Federal Sav. & Loan Assoc. of Monessen.*

**11.** Governmental restrictions upon communications with debtors are typically found in federal and state debt collection statutes. *See, e.g.*, 15 U.S.C. §§ 1692 *et seq.* (Federal Fair Debt Collection Practices Act). Restrictions under the Act include limits on when communications made be attempted, § 1692c(a); to whom the communications may be directed, § 1692c(b); and even on the content of the communications, § 1692c(c), 1692e, 1692g. Certain types of speech are restricted or barred. 15 U.S.C. § 1692c(c); 1962d(3), (4), (5), (6).

speech intended to violate § 362(a)(6) would not be protected. *See id.* at 1020–21 n. 3. *Stonegate* is inapposite here in that an evidentiary hearing was conducted in this proceeding, and the evidence showed that the defendants intended to harm the debtor's business, did in fact harm that business, and did so in order to pressure the debtor to pay prepetition sums claimed due.

Therefore, I conclude that § 362(a)(6), although broad, is sufficiently tailored to leave unfettered speech which will not affect the twin purposes behind the automatic stay. As defendants' speech in the matter at bench runs afoul of the legitimate purposes addressed by § 362(a)(6), and as such speech is not constitutionally protected from the reach of § 362(a)(6), the First Amendment affords defendants no defense.[12]

### V.

■ The debtor requests compensatory and punitive damages pursuant to 11 U.S.C. § 362(h).[13] Because the constitutional issue surrounding the creditor's conduct was not frivolous, and has not been much discussed, no punitive damages are appropriate. *See In re Norton,* 717 F.2d 767, 775 (3d Cir.1983) (fine imposed for violating automatic stay is inappropriate when law was unclear.) The debtor has proven, though, compensatory damages due to loss of business in the sum of $3,000.00. *In re Stephen W. Grosse, P.C.,*

84 B.R. 377 (Bankr.E.D.Pa.1987). This award will be assessed against the defendant Hotel and its principal Mr. Melius jointly and severally. As the defendant Garcia was acting solely as an employee and under direct orders from his superior, no individual liability against Mr. Garcia will be assessed. In addition, attorney's fees of $600.00 will also be assessed against Melius and the Hotel to recompense the debtor's estate for the time spent by counsel for the debtor in vindicating its rights. *Id.* As the case is now one under chapter 7, this judgment will run in favor of the chapter 7 interim trustee.

### VI.

■ Finally, the defendant lessor requests that any judgment for violating § 362(a) be set-off against any unpaid postpetition liability incurred by the debtor. This request must be rejected.

Although not clearly stated, the lessor implies that it is appropriate to permit a set-off of mutual postpetition obligations, and certainly there is support for this general proposition. *See, e.g., In re Mohawk Industries, Inc.,* 82 B.R. 174, 178–79 (Bankr.D.Mass.1987); *Matter of Fordson Engineering Corp.,* 25 B.R. 506 (Bankr.E.D.Mich.1982). *But see* 4 *Collier on Bankruptcy* ¶ 553.08[1], at 553–40 (15th ed. 1988) (footnote omitted) ("Section 553 is silent regarding setting off mutual postpet-

---

**12.** Although defendants' conduct is not constitutionally protected, the lessor's rights under the Bankruptcy Code compared with the rights of other creditors are well protected. *See* 11 U.S.C. § 365(d). When the debtor failed to make required postpetition rental payments and assume the lease, the defendant lessor was granted relief from the stay. *In re DeSantis,* 66 B.R. 998 (Bankr.E.D.Pa.1986).

**13.** While defendants challenge the debtor's assertion that § 362(a) was violated, they have not challenged the debtor's reliance upon § 362(h) for recovery. In *Budget Service Co. v. Better Homes of Virginia, Inc,* 804 F.2d 289 (4th Cir. 1986), the Fourth Circuit Court of Appeals held that § 362(h) applies to corporate debtors despite its use of the term "individual." *Accord In re NWFX, Inc.,* 81 B.R. 500 (Bankr.W.D.Ark. 1987). *See also In re H & H.Beverage Distributors, Inc. v. Department of Revenue,* 79 B.R. 205

(E.D.Pa.1985), *rev'd on other grounds,* 850 F.2d 165 (3d Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 560, 102 L.Ed.2d 586 (1988); *In re Promower, Inc.,* 56 B.R. 619 (Bankr.D.Md.1986), *aff'd,* 74 B.R. 49 (D.Md.1987). *Cf. In re Adamo,* 619 F.2d 216, 222 (2d Cir.), *cert. denied,* 449 U.S. 843, 101 S.Ct. 125, 66 L.Ed.2d 52 (1980) (court refused to literally apply repealer provisions of Bankruptcy Reform Act of 1978). As defendants have not raised the issue, I do not reach it. I do note, though, that in *In re Wagner,* 74 B.R. 898 (Bankr.E.D.Pa.1987) I concluded that § 362(h) supplements but does not replace the traditional mechanism of contempt for enforcement of the automatic stay. Thus, whether § 362(h) applies is most significant in considering bankruptcy court power to assess punitive damages and in the scope and method of appellate review under Bankr.R. 9020. *See In re Stephen W. Grosse, P.C., 84 B.R. 377 (Bankr.E.D. Pa.1988).*

ition obligations. The courts are divided on whether such obligations may be set off.") The issue *sub judice*, though, is whether damages assessed against a lessor for violating the automatic stay should be viewed as a mutual obligation of the debtor-lessee to pay postpetition rent.

Section 365 provides to commercial lessors many protections not afforded to other creditors. Among them is the obligation of the debtor to continue to pay rent postpetition while it decides whether to assume or reject the lease. 11 U.S.C. § 365(d)(4). The lessor holds an administrative claim for any rent unpaid for this period. *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 972 (Bankr.E.D.Pa.1987). In this instant case, the administrative claim is one falling under chapter 11, as it occurred prior to conversion to chapter 7, and is to be paid after chapter 7 administrative claims. *Id.*, at 973; 11 U.S.C. § 727(b).

Generally, § 365(d) evinces a congressional intent that this administrative claim of the lessor be paid immediately. *Dieck haus Stationers*, 73 B.R. at 972. Nonetheless, as with other administrative claimants, the timing of payment prior to final distribution is subject to court discretion. *Id.*`

To permit a set-off by a postpetition creditor who has violated the automatic stay could potentially interfere with enforcement of § 362(a). *See Griggs v. Provident Consumer Discount Co.*, 680 F.2d 927, 932–933 (3d Cir.1982) (liability for violating federal consumer protection act could not be offset against discharged prepetition claim). *Cf. In re Watson*, 78 B.R. 267 (Bankr.C.D.Cal.1987) (damages awarded for violating § 362(a) could not be set-off against non-dischargeable prepetition debt). These damages, which shall be payable to the chapter 7 trustee, will be distributed to creditors in the priority established by 11 U.S.C. § 727. *Cf. Payne v. Wood*, 775 F.2d 202 (7th Cir.1985) (insurance proceeds from damage to estate property is payable to chapter 7 trustee to the extent not claimed as exempt). While the lessor may recover the full amount of its chapter 11 administrative claim, its conduct does not warrant the immediate payment of such claim. This is especially true as defendants' conduct may have contributed to the failure of this chapter 11 case and its conversion to chapter 7. Thus, the request for set-off shall be denied.

## VII.

In conclusion, the rights of this lessor defendant were fairly protected by the Bankruptcy Code. Indeed, the lessor was granted relief from the stay when the debtor was unable to assume the lease, pursuant to 11 U.S.C. § 365(b), (d)(4), and will be awarded an administrative claim for unpaid prepetition rent. It was both improper and unnecessary to take extra-judicial measures to coerce payment of the prepetition debt. Indeed, the inflammatory nature of the defendants' actions created a potentially explosive situation. These actions were prohibited by the automatic stay and resulted in clear harm to the debtor. An appropriate judgment will therefore be entered.

## ORDER

AND NOW, this 6 day of February, 1989, for the reasons stated in the accompanying opinion, it is hereby ORDERED, pursuant to Bankr.R. 9021, that the Deputy Clerk in Charge of Bankruptcy Operations shall enter judgment in favor of plaintiff and against defendants North American Motor, Inc. and Mr. Richard Melius in the amount of $3,000.00 in damages and $600.00 in attorney's fees.

It is FURTHER ORDERED that the judgment shall be enforceable by the chapter 7 trustee and payment shall be made to the chapter 7 trustee.