**In re Eugene M. ANDRUS and Luba Andrus, Debtors.**

**Bankruptcy No. 92 B 10331.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

July 20, 1995.

**312**

Kenneth Cunniff, Chicago, IL, for plaintiff.

James W. Reilley, Des Plaines, IL, for defendant.

*FINDINGS OF FACT AND CONCLU-SIONS OF LAW ON DEBTORS' MO-TION FOR CIVIL CONTEMPT FIND-ING*

JACK B. SCHMETTERER, Bankruptcy Judge.

This matter is before the Court upon a Notice of Hearing and Debtors' Emergency Motion for Order of Civil Contempt, Damages, and Injunctive Relief against a creditor, Stanley Stann ("Stann"). Following a hearing and consideration of evidence, the Court now makes and enters the following Findings of Fact and Conclusions of Law.

### *JURISDICTION*

■ This hearing is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and (O). United States Bankruptcy Judges have authority as well as core jurisdiction under the Bankruptcy Code and the United States Constitution to enter orders of civil contempt. *In re Skinner,* 917 F.2d 444, 447–450 (10th Cir.1990), and *In re Walters,* 868 F.2d 665, 669 (4th Cir.1989); *see also In re Ragar,* 3 F.3d 1174 (8th Cir.1993) (finding bankruptcy judge had authority to enter even a criminal contempt order); *contra, see In re Sequoia Auto Brokers Ltd.,* 827 F.2d 1281 (9th Cir. 1987); *see also* discussion in "Contempt Power of the Bankruptcy Court," *Bankruptcy Developments Journal,* Vol. 6, No. 1 (1989) pp. 205–51.

### *FINDINGS OF FACT*

This proceeding was filed under Chapter 7 of the Bankruptcy Code.

On June 24, 1993, an Order of Discharge was entered in favor of the debtors, Eugene and Luba Andrus. The Order provided, *inter alia,* that "all creditors whose judgments are declared null and void ... are enjoined from instituting or continuing any action or employing any process or engaging in any act to collect such debts as personal liabilities of the above-named debtors." The notice of discharge was directed by the Clerk of Court to all creditors. Stann & Associates was listed as a creditor on Schedule D of the bankruptcy filing as having a disputed, secured debt of $21,944.13. Stann owns the creditor firm. So the debt was due to him individually. Any personal obligation of Mr. and Mrs. Andrus for that debt was discharged herein. Nothing in these proceedings has called on this Court to determine whether the debt was or was not secured or to decide what *in rem* remedies may be

exercised by Stann if the debt was secured. The problem here is that Stann has continued efforts to collect from Debtors despite their discharge.

Soon after the discharge, Mr. Stann posted a large sign near the Debtors' house (near where he lived) demanding payment. In response to Mr. Stann's first sign, which read "GENE ANDRUS, WHERE'S MY MONEY?", the Debtors filed a motion for an Order of Contempt, Damages, and Injunctive Relief. That first sign was immediately removed upon the filing of that motion. An Agreed Order for Injunctive Relief and Dismissal of Proceedings on April 27, 1995, was entered herein. This Order enjoined "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset ..." the debt that had been discharged. The order referred to the statutory injunction under 11 U.S.C. § 524 as remaining "in effect generally and particularly as to the debt of Andrus to Stann in the amount of $21,944.13."

Soon thereafter, Stann placed a second sign in his yard (two doors from the Debtors' house). This second sign read, "GENE ANDRUS WENT BANKRUPT! HE DIDN'T PAY HIS BILLS. HE IS A DEADBEAT! THIS IS A PUBLIC SERVICE ANNOUNCEMENT." Stann also engaged in a pattern of abuse and harassment clearly designed to harass and intimidate the Debtors into paying the discharged debt. The second sign was but one step in that pattern, and is found to have been erected with the intent and effect of pressuring Debtors into paying him the discharged debt.

On February 9, 1995, Mr. Stann left a message on the Andrus' answering machine. Mr. Stann acknowledged that he left the following message:

Stan Stann here (parts inaudible) to return my call so now we're going to have to get real embarrassing. Once I start the ball rolling on these things, Gene, I ain't going to f____g talk to you anymore. I would appreciate the courtesy of [the] a call back, otherwise we're going to start making your life real interesting. And, hey, you're bringing this all on yourself, but we're going to let the whole world know what a cheap son of a bitch you are. So I suggest that you get in touch with me; otherwise, once I start the moving this time on it, banners and the whole thing, the whole shot, you're going to be ashamed to even come home because everyone on this lake is going to know what a f____g deadbeat you are. So you'd better make peace with me fairly quickly, guy.

Tr. 94–99.

On June 8, 1995, Mr. Stann, while riding his bicycle in the neighborhood of the houses of Stann and the Debtors, saw the Debtors in their car and approached them on Luba Andrus' side of the car. (Tr. 66). Mr. Stann said to Luba Andrus, "I want my f___ing money, I want my money. Why do you f____ with me?" (Tr. 66). Mr. Stann also said, "I'm going to get my money. Your faggot husband. No one is going to protect you. Wait until you throw another party. You think you're going to have another party in your house? You just wait and see." (Tr. 66–67).

On July 3, 1995, Luba Andrus was on her deck with a neighbor when Mr. Stann began yelling at her from his yard. (Tr. 68). Mr. Stann shouted, "Who do you think you are? Your husband is a deadbeat. I've told the whole Ukrainian community about you. They know about you. You're just off the boat. You think that that attorney of yours is going to protect you? Your attorney knows nothing. Get yourself a better attorney. No court is going to protect you. You get that deadbeat husband of yours. I want my money. I want Gene. I want my money." (Tr. 68).

The following day, July 4, 1995, once again Mr. Stann confronted Luba and Eugene Andrus while he and the Debtors were both hosting guests on that holiday. Mr. Stann shouted to Eugene Andrus, "You're a deadbeat. I want my money. Let's go. I'll beat it out of you. Let's go fight over it. I'm going to beat the shit out of you. And if you win, Gene—because you're such a faggot you're not going to win—but if you win, I'll drop the $20,000." (Tr. 70–71). Mr. Andrus is trying to re-establish his business in his home, but finds it difficult because he does

not know when Mr. Stann will be standing outside. (Tr. 87).

Marco Andrus, son of the Debtors, also witnessed the confrontation between Debtors Eugene and Luba Andrus and Mr. Stann that occurred on July 4, 1995. (Tr. 27). Marco Andrus testified that Mr. Stann said, "Gene meet me in the woods in ten minutes. You kick my ass, and we're even. When I kick your ass, you pay me my money. Because you're not going to kick my ass because you're a fucking faggot, and you have no balls like the horses outside your house." (Tr. 28). Mr. Stann also said, "Gene, you fucking asshole, you look a lot like Adolph Hitler. And, like Adolph Hitler, you are all show and no go, you Austrian faggot." (Tr. 27–28).

Mr. Stann testified that on July 4, 1995, he had a conversation with Gene Andrus which was witnessed and testified to by Luba and Marco Andrus. (Tr. 110). In this conversation, he says that he suggested that they "work it out like men." (Tr. 110). Mr. Stann testified that he suggested that they fight for the discharged debt. (Tr. 111). If Mr. Andrus won, Mr. Stann would give him another $20,000.00. (Tr. 111). Mr. Stann also acknowledged the June 8, 1995, confrontation while riding his bicycle, also witnessed and testified to by Luba Andrus. (Tr. 112–13). Mr. Stann substantially confirmed the testimony of Luba Andrus, but denied asking for money. (Tr. 114). Mr. Stann expressed his candid hatred of and contempt for Mr. Andrus because the debt formerly due him was discharged.

Even if Stann was not earlier aware of the discharged order and statutory injunction against collecting the discharged debt, as a result of the initial court action regarding his first sign, he clearly became aware of those matters at that time. The first sign was erected by Mr. Stann in February or March of 1995.

Subsequent to removal of the first sign, Mr. Stann made repeated efforts to collect the discharged debt, all despite his awareness of the Discharge Order and statutory injunction against collecting the discharged debt.

On several occasions, Stann made verbal attempts to collect the discharged debt, as described above.

Stann acknowledged the telephone call of February 9, 1995, and the July 4, 1995, conversation with Mr. Andrus at which Luba Andrus and Marco Andrus were present. Mr. Stann acknowledged that he suggested that he and Mr. Andrus fight for the discharged debt and that, if Mr. Andrus wins, Mr. Stann would forget the debt.

Stann also acknowledged a July 3, 1995, conversation in which he stated that "[i]f the [Andrus's] dog ever comes over here, I'll introduce him to some friends of mine that own a Thai restaurant."

Stann further acknowledged the substance of the conversation of June 8, 1995, as testified to by Luba Andrus.

The second sign was erected by Mr. Stann in furtherance of his attempt to collect the discharged debt. He later replaced it in the same location with a third sign. The third sign was standing as of the date of the last hearing, and Stann has not in person or through counsel expressed willingness to remove it. The third sign repeats the same language as that of the second sign.

■ Movant has shown by clear and convincing evidence that Stanley Stann willfully violated the injunction under 11 U.S.C. § 524 barring any effort by him to collect the discharged debt, all through his many repeated efforts, including posting of the second and third signs.

Mr. and Mrs. Andrus sought, pursuant to Fed.R.Bankr.P. 9020, a finding that Mr. Stann was in civil contempt of the statutory injunction barring collection of a discharged debt. 11 U.S.C. § 524, and their attorney was appointed to prosecute the petition under Rule 9020.

Comments of the Court from the bench on July 6, 1995, are made part hereof and incorporated by this reference as additional Findings of Fact. Fact statements contained in the Conclusions of Law will stand as additional Findings of Fact.

## CONCLUSIONS OF LAW

**1.** When debtors are granted discharge of debt, they are protected from the creditor's efforts to collect the debt from them personally by 11 U.S.C. § 524(a)(2). Under that provision, the discharge "operates as an injunction against the commencement or continuation of any action ... or an act, to collect, recover or offset any such debt as a personal liability of the debtor...." Willful violation of the injunction imposed under § 524(a)(2) warrants the finding of contempt. *In re Torres*, 117 B.R. 379, 382 (N.D.Ill.1990). To find a creditor in civil contempt, "the court must find that the offending party knowingly violated a definite and specific court order." *In re Johnson*, 148 B.R. 532, 538 (N.D.Ill.1992). The burden is on the petitioner to prove the violation "by clear and convincing evidence." *In re Ryan*, 100 B.R. 411, 417 (N.D.Ill.1989). A bankruptcy court can impose upon a creditor who violates the § 524 injunction sanctions for civil contempt. *Torres*, 117 B.R. at 382; *see also Skinner* and *Walters, supra.* The Court can impose upon a creditor who violates the injunction through civil contempt remedial and compensatory, but not punitive, sanctions. *Id.*

**2.** The central issues in this civil contempt proceeding are whether Stanley Stann willfully attempted to collect the discharged debt formerly due him from Eugene and Luba Andrus, and whether any part of Mr. Stann's speech and sign wording was protected by the First Amendment to the United States Constitution. The petitioners have met their burden to prove by clear and convincing evidence his repeated willful violation of the permanent injunction under § 524. Mr. Stann is not entitled to interfere with Eugene and Luba Andrus's fresh start as provided in the Bankruptcy Code, but he has sought to do so and will continue to do so unless and until stopped.

**3.** The three signs erected by Stanley Stann were not protected speech under the First Amendment to the United States Constitution, as he has argued, but were (and the third sign remains) continuing attempts as part of other efforts to collect the discharged debt in violation of 11 U.S.C.

§ 524(a)(2). When the intent of a sign displayed by a creditor is to coerce and harass the discharged debtor into paying the discharged debt, the sign is not protected speech. *In re Sechuan City, Inc.*, 96 B.R. 37, 43 (E.D.Penn.1989). In *Sechuan City*, the creditor's behavior was designed to coerce payment from the debtor; therefore, the court held the sign was not protected speech. *Id.* at 40.

**4.** The Fifth Circuit has held that a sign, with substantially the same word as the second and third signs Mr. Stann erected, was protected speech. *Turner Advertising Company v. National Service Corporation*, 742 F.2d 859 (5th Cir.1984). However, in finding those signs constitutionally protected, the Fifth Circuit noted that the message was "not being published by one whose profit interests are served by the view espoused." *Id.* at 862. The Court also noted that the respondent was not presenting the message with the expectation of remuneration. *Id.* The findings of the Fifth Circuit are in contrast to the Findings here. This Court has found that Mr. Stann's signs, including the second and third, were all part of his continuing effort to collect the discharged debt from Eugene and Luba Andrus. This is evident from the several verbal and physical acts he performed in an effort to collect the debt, and the central role of the signs in the context of those acts. As in *Sechuan City*, the signs at issue here were not protected speech because each of those signs was part of the stream of Stann's other efforts to pressure the Debtors into paying the discharged debt.

**5.** One case in this District has dealt with the that the issue of whether signs posted by a creditor that might be considered an effort to collect are protected speech. It was held by the bankruptcy judge that signs on the sides of a truck parked in front of the debtor's business were in violation of the automatic stay under 11 U.S.C. § 362. *In re Stonegate Security Services, Ltd.*, 56 B.R. 1014, 1017 (N.D.Ill.1986). The District Court, on review, did not reverse but remanded the case because the bankruptcy judge found a violation without hearing evidence to determine the facts. *Id.* at 1021. The District Court suggested in the opinion,

however, that the speech was not protected if the defendant intended to frustrate the process of the court. *Id.* at 1020, n. 3. This Court has determined that Mr. Stann's intent in posting all the signs and their effect in the context of his other activities was to coerce and intimidate the Debtors into paying the discharged debt in violation of the permanent statutory injunction of discharge. The three signs that Mr. Stann placed in his yard were, therefore, not protected speech.

 6. Since this Court finds that Stanley Stann is in civil contempt, the awarding of civil remedies to the Debtors is appropriate. These "remedies fall into two broad categories." *Hill v. Farmers Home Administration,* 19 B.R. 375, 379 (Bankr.N.D.Tex. 1982). The first category, which is remedial, "is to make a recalcitrant party comply with an order of the court." *Id.* The second category of remedy is compensatory, whose "purpose is to reimburse an injured party for losses and expenses incurred because of the adversary's noncompliance." *Id.* The imposition of both remedial requirements of sign removal and compensatory allowance are appropriate in this case.

7. Mr. Stann has expressed his hatred and contempt for Mr. Andrus and has repeatedly pressed him for payment. He has not even expressed a willingness to stop any of his efforts to intimidate Debtors into paying the discharged debt individually. Mr. Stann has not demonstrated acceptance of his duty to obey the law or respect the law involved here regardless of his personal feelings. Therefore, remedial damages must be imposed on Mr. Stann to encourage him to comply with the permanent injunction under 11 U.S.C. § 524. To ensure that Eugene and Luba Andrus do not suffer from Mr. Stann's non-compliance, compensatory remedies must be awarded to include at least a part of the attorney's fees and expenses incurred by then since the initial Agreed Order was entered on April 27, 1995. Moreover, the third sign, which has been found to constitute only one part of the longstanding effort to collect the discharged debt, must be removed and that sign cannot be restored. No order will be entered prohibiting Mr. Stann from future speech, and an order initially signed by this Court today that could be read to bar any other signs has been vacated *sua sponte* as overly broad. But should Mr. Stann again take steps by any means to seek collection of the discharged debt from the debtors individually, he will then face increased civil and possibly even criminal contempt sanctions.