742 F.2d 859
 11 Collier Bankr.Cas.2d 439, Bankr. L. Rep. P 70,053
In the Matter of NATIONAL SERVICE CORPORATION, Debtor.
TURNER ADVERTISING COMPANY, Plaintiff-Appellant,
v.
NATIONAL SERVICE CORPORATION, Defendant-Appellee.
 No. 83-3588.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 27, 1984.
 
 Charles W. Nelson, Jr., New Orleans, La., Schreeder, Wheeler & Flint, Lawrence S. Burnat, John A. Christy, Atlanta, Ga., for plaintiff-appellant.
 Chaffe, McCall, Phillips, Toler & Sarpy, Harry McCall, Jr., L. Havard Scott, III, Edward M. Heller, New Orleans, La., for defendant-appellee.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before REAVLEY, JOHNSON, and JOLLY, Circuit Judges.
 JOHNSON, Circuit Judge:
 
 
 1
 National Service Corporation (NSC) is a corporation engaged in the business of drain and sewer cleaning and light plumbing repairs. In 1974, NSC entered into a license agreement with Sears, Roebuck & Company (Sears), which authorized NSC to conduct its business under the name "Sears Drain and Sewer Service" or "Sears Authorized Plumbers". NSC conducted business under the Sears name and, in 1980, NSC entered into a contract with Turner Advertising Company (TAC) that obligated TAC to furnish outdoor billboard advertisements to NSC in exchange for NSC's payment of $148,525.20. Thereafter, TAC furnished its services to NSC but, before NSC paid TAC for its services, NSC filed for voluntary bankruptcy under Chapter 11 of the Bankruptcy Code. Disgruntled, TAC proposed to use the advertising artwork created for NSC and superimpose over it the following messages in large black letters: "Beware, This Company Does Not Pay Its Bills" and "Beware, This Company Is In Bankruptcy." When NSC learned of TAC's decision to post the billboards, NSC requested the bankruptcy judge to enjoin TAC from posting the billboards, alleging that TAC was merely attempting to harass the debtor in violation of 11 U.S.C. Sec. 362. The bankruptcy judge enjoined TAC from posting the billboards, the district court affirmed the bankruptcy judge's decision, and TAC perfected its appeal to this Court, alleging that its first amendment rights had been violated. Convinced that TAC's proposed message constitutes pure free speech and that the bankruptcy court's ruling constitutes an invalid prior restraint, we are constrained to reverse the district court's judgment.
 
 I. FACTS AND COURSE OF PROCEEDINGS
 
 2
 As noted, NSC is a corporation engaged in the plumbing and sewer business in the Atlanta, Georgia, metropolitan area, and in other areas of the United States. While NSC is a legally incorporated entity, it operates its business under the Sears name, pursuant to a contract entered into with Sears in 1974 that gave NSC the right to use the Sears name.
 
 
 3
 In 1980, in an attempt to obtain advertising services, NSC contacted TAC, a corporation engaged in the outdoor advertising business. The contract between NSC and TAC was for a twelve-month billboard showing in the Atlanta, Georgia, media market. The billboards depicted a plumber with "Sears Plumber" on his shirt or depicted a van with "Sears Authorized Plumbers" painted on the van. The advertising left the distinct impression upon the public that it was dealing directly with Sears. Indeed, NSC's name did not appear anywhere on the advertising and the advertising message did not disclose to the public that NSC was merely a franchisee or licensee of Sears.[1]
 
 
 4
 On January 13, 1981, NSC filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. By January 1982, no progress had been made in preparing or submitting a plan of reorganization to the bankruptcy court. Stuck with a large bill, TAC proposed to use NSC's original advertising artwork and superimpose on it a message that the company was in bankruptcy and may not be able to pay its bills. According to TAC, by publishing this message, the public, which had previously been led to believe that the "Sears Plumber" Service was a service of Sears itself, would now have all the information it needed to make an informed decision in selecting plumbing services. TAC also maintained that its reputation and credibility with the public necessitated disclosure of this information since TAC's name appears on all its billboards.[2]
 
 
 5
 Upon learning of TAC's proposed action, NSC obtained an ex parte order from the bankruptcy court on January 29, 1982, restraining TAC from taking any action or doing anything designed to or having the effect of collecting, assessing or recovering on any claim arising before January 12, 1981, against Sears or NSC.[3] The order also enjoined TAC from publicly stating that NSC was a debtor in a Chapter 11 case or from conveying any message, directly or indirectly, which would adversely affect the business done by Sears or NSC in any area in which either or both were engaged in business.
 
 
 6
 Upon being advised of the existence of these ex parte orders, TAC filed a motion to vacate pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, and also commenced an adversary proceeding seeking relief from the stay so as to proceed with the poster showing. NSC answered the complaint and counterclaimed for an injunction to enjoin TAC from posting the billboards. On April 13, 1982, the bankruptcy court held a hearing on TAC's adversary proceeding and its motion. NSC, TAC, and Sears were represented by counsel. On October 5, 1982, the bankruptcy court entered an order and judgment vacating its prior order. However, the bankruptcy court did grant NSC's request for an injunction enjoining TAC from publicizing the fact that it was in bankruptcy. The court ordered that "TAC cannot publish any information about NSC which publication amounts to no more than an attempt to harass and intimidate the debtor," and further ordered that "TAC is enjoined from publishing any information about NSC which constitutes a violation of the automatic stay of section 362." TAC appealed the bankruptcy court's order to the district court, where NSC was represented solely by Sears' attorneys. In an order dated August 31, 1983, the district court affirmed the order of the bankruptcy court. The district court concluded that the message was misleading commercial speech and that TAC could constitutionally be enjoined from publishing it. The district court also concluded that even if TAC's message constituted pure speech, the bankruptcy court still could constitutionally enjoin its publication. This appeal followed.
 
 
 7
 II. TAC'S MESSAGE: PURE SPEECH OR COMMERCIAL SPEECH
 
 
 8
 In its judgment affirming the bankruptcy judge's order, the district court concluded that TAC's message was commercial speech and that the bankruptcy judge did not err by restraining TAC's dissemination of the message. On appeal, TAC argues that the district court erred by concluding that its message was mere commercial speech and contends that its message was an expression of pure speech entitled to unfettered first amendment protection. We agree.
 
 
 9
 While the term "commercial speech" has never been defined explicitly by the Supreme Court, the Court has described commercial speech as communication "related solely to the economic interest of the speaker and its audience" or that speech "which does no more than propose a commercial transaction." See, Central Hudson Gas v. Public Service Commission of New York, 447 U.S. 557, 100 S.Ct. 2343, 2348, 65 L.Ed.2d 341 (1980); Friedman v. Rogers, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979); Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 2698-99, 53 L.Ed.2d 810 (1977); and Virginia Board v. Virginia Citizens Consumer Council, 425 U.S. 748, 96 S.Ct. 1817, 1825, 48 L.Ed.2d 346 (1976). In the case at bar, we are convinced that TAC's message does not constitute mere commercial speech. TAC's message is not a solicitation for the sale or purchase of a product or service. TAC's message is not mere advertisement since it is not being published by one whose profit interests are served by the view espoused. Finally, it is noted that TAC's message is not in the form of a paid advertisement. Rather, the message more closely resembles a public service message, and one for which TAC is not being remunerated. TAC's message simply states two unassailable facts, that NSC is in bankruptcy and that NSC cannot pay its bills.
 
 
 10
 Having determined that TAC's message constitutes pure speech, we have little difficulty reaching the conclusion that the bankruptcy court's injunction constituted an improper prior restraint on first amendment expression. The Supreme Court, in a plethora of cases, has held that prior restraints come before the Court with a "heavy presumption" against their constitutional validity. When the content of pure speech is restrained and prohibited, the restraint bears a heavy presumption against its validity and mandates the closest scrutiny. See, Widmar v. Vincent, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981); Police Department of the City of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); Carroll v. President and Commissioners of Princess Ann, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968). A review of the bankruptcy and district courts' decisions demonstrates that the content of TAC's message was restrained and prohibited. The blanket provisions of the bankruptcy judge's order prohibited TAC from disseminating its message simply because the message was thought to be threatening to NSC. The mere fact that NSC would be damaged by TAC's dissemination of the message, however, does not warrant a prior restraint. Indeed, in Organization for a Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971), in overturning a prior restraint, the Supreme Court stated that the interest of an individual in being free from public criticism of his business practices did not warrant use of a prior restraint on free speech. Id. 91 S.Ct. at 1578. See also, N.A.A.C.P. v. Claiborne Hardware Co., 458 U.S. 886, 102 S.Ct. 3409, 3425, 73 L.Ed.2d 1215 (1982) ("The claim that the expressions were intended to exercise a coercive impact on respondent does not remove them from first amendment protection.") In the instant case, the only threat posed by TAC's message was that the consumers in the Atlanta area would become familiar with NSC's bankruptcy. Clearly under Organization for a Better Austin v. Keefe and N.A.A.C.P. v. Claiborne Hardware Co., such alleged threats do not warrant use of a prior restraint.
 
 
 11
 Hence, since we conclude that TAC's message constitutes pure speech and that the bankruptcy court's order constitutes an impermissible prior restraint upon that free speech, we reverse the district court's decision.
 
 
 12
 REVERSED.
 
 
 
 [1]
 The advertising campaign provided by TAC was what is known in the outdoor advertising business as a "one hundred GRP" showing. This term means that the advertiser's message would be seen by 100 percent of the people in the Atlanta, Georgia, media market within a thirty-day period. Normally, a poster showing of this magnitude lasts only one month
 
 
 [2]
 While TAC is engaged primarily in the business of posting commercial messages for advertisers, TAC regularly posts what it terms "public service messages" on its billboards. In the past, TAC has posted messages encouraging adherance to the 55 mile per hour speed limit and encouraging motorists to exercise extra care when schools are opening. Since TAC's name appears on every billboard, TAC maintains it must be sensitive to the impact that the advertising it posts may have on its reputation with the public
 
 
 [3]
 The bankruptcy court later changed its ex parte order to exclude Sears from its provisions, recognizing that Sears was not a debtor entitled to the protections of 11 U.S.C. Sec. 362. Nevertheless, Sears' lawyers remained actively involved in the litigation