**In re Eugene M. ANDRUS and Luba Andrus, Debtors.**

**Appeal of Stanley STANN, Creditor.**

**No. 95 C 4629.**

United States District Court, N.D. Illinois, Eastern Division.

Nov. 28, 1995.

James T. Reilly, Law Offices of Peter F. Ferracuti, Ottawa, IL, for Stanley Stann, creditor.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Stanley Stann appeals an order of the bankruptcy court finding him in civil contempt and directing him to pay remedial and compensatory damages. *In re Andrus,* 184 B.R. 311 (Bankr.N.D.Ill.1995). For the reasons set forth below, we affirm the decision of the bankruptcy court.

### I. Background [1]

The debtors in this Chapter 7 bankruptcy, Eugene and Luba Andrus, obtained an Order of Discharge on June 24, 1993. This order directed all creditors possessing void judgments to refrain from using any means or process to try to collect the Andrus's prepetition debts. Unfortunately for Stann and his firm, Stann & Associates, this order was entered before they received payment for the $21,944.13 owed to them by the debtors. Obviously dissatisfied with the result of the bankruptcy proceedings, in February or March of 1995 Stann decided to post a large sign near the debtors house reading, "GENE ANDRUS, WHERE'S MY MONEY?" The debtors immediately filed a motion for contempt before the bankruptcy court, and

---

**1.** We glean this background discussion from the bankruptcy court's findings of fact. 184 B.R. at 312–14.

Stann agreed to take down the sign. The parties subsequently entered an agreed Order for Injunctive Relief and Dismissal of Proceedings, which specifically enjoined "the commencement or continuation of any action, the employment of any process, or an act, to collect, recover or offset" the discharged debt. 184 B.R. at 313. The order also specifically referred to the injunction imposed by 11 U.S.C. § 524 against attempts to collect a discharged debt.

Stann apparently was not deterred by this order or the statutory injunction. Soon after resolving the dispute over the first sign, Stann posted a second sign on his property—which is two doors down from the debtors' house—declaring, "GENE ANDRUS WENT BANKRUPT! HE DIDN'T PAY HIS BILLS. HE IS A DEADBEAT! THIS IS A PUBLIC SERVICE ANNOUNCE-MENT."[2] The signs were not the only evidence of Stann's disappointment with the debtors; indeed, the bankruptcy court found them to be merely part of a larger pattern of misconduct intended to pressure the debtors into paying the discharged debt. On February 9, 1995, Stann left a harassing and vulgar message on the Andrus's answering machine, in which Stann threatened to ruin Eugene Andrus's reputation in the community unless he repaid the debt.[3] On June 8, 1995, Stann approached the debtors in their car and repeatedly asked them to repay the money they owed him.[4] On July 3, 1995, Stann shouted to Ms. Andrus from his yard:

Who do you think you are? Your husband is a deadbeat. I've told the whole Ukrainian community about you. You're just off the boat. You think that that attorney of

yours is going to protect you? Your attorney knows nothing. Get yourself a better attorney. No court is going to protect you. You get that deadbeat husband of yours. I want my money. I want Gene. I want my money.

Tr. 68. The following day Stann approached the Andruses and offered to fight Gene Andrus for the money:

You're a deadbeat. I want my money. Let's go. I'll beat it out of you. Let's go fight over it. I'm going to beat the shit out of you. And if you win, Gene—because you're such a faggot you're not going to win—but if you win, I'll drop the $20,-000.

Tr. 70–71.

The Andruses brought a civil contempt action against Stann pursuant to Fed. R.Bankr.P. 9020, alleging that he violated the injunction in the Discharge Order, as well as 11 U.S.C. § 524(a)(2). After an evidentiary hearing, during which Stann corroborated most of the testimony offered by Ms. Andrus, Judge Schmetterer found that Stann had willfully violated the injunction imposed by § 524(a)(2) by engaging a course of conduct intended to force the payment of a discharged debt. The bankruptcy court also found that the signs posted by Stann did not constitute protected speech under the First Amendment, and thus could provide the basis for a finding of contempt. The court ordered Stann to pay remedial and compensatory damages, and directed him to remove the sign posted on his property, although it did

---

2. Although this second sign was later removed, it was replaced by an identical sign that was standing at the time of the contempt proceeding before Judge Schmetterer.

3. Stan Stann here (parts inaudible) to return my call so now we're going to have to get real embarrassing. Once I start the ball rolling on these things, Gene, I ain't going to f____g talk to you anymore. I would appreciate the courtesy of . . . a call back, otherwise we're going to start making your life real interesting. And, hey, you're bringing this all on yourself, but we're going to let the whole world know what a cheap son of a bitch you are. So I suggest that you get in touch with me; otherwise, once I start the moving this time on it, banners and

the whole thing, the whole shot, you're going to be ashamed to even come home because everyone on this lake is going to know what a f____g deadbeat you are. So you'd better make peace with me fairly quickly, guy.
184 B.R. at 313 (citing Tr. 94–99.)

4. Ms. Andrus testified that Stann said:

I want my f____ing money, I want my money. Why do you f____ with me? . . . I'm going to get my money. Your faggot husband. No one is going to protect you. Wait until you throw another party. You think you're going to have another party in your house? You just wait and see.
184 B.R. at 313 (citing Tr. 66–67.)

not prohibit Stann from engaging in protected speech in the future. 184 B.R. at 316.

## II. Discussion

Stann now appeals the contempt order issued by the bankruptcy court.[5] We review the factual findings of the bankruptcy court for clear error, Fed.R.Bankr.P. 8013, and evaluate its legal conclusions *de novo. Meyer v. Rigdon,* 36 F.3d 1375, 1378 (7th Cir.1994). Stann raises a single issue in this appeal: Did the bankruptcy court's interpretation of § 524(a)(2) and its finding of contempt "abridg[e] the freedom of speech" guaranteed by the First Amendment to the United States Constitution?[6] Although wary of injunctions restricting speech, and mindful of the importance of the First Amendment in civic life, we nonetheless conclude that the contempt order issued in this case did not run afoul of the First Amendment.

At the outset we observe that the injunction and contempt order were directed at conduct—that is, attempting to collect a discharged debt. The fact that Stann's conduct contained a "communicative element" does not necessarily render it protected speech under the First Amendment. *See R.A.V. v. City of St. Paul, Minn.,* 505 U.S. 377, 387, 112 S.Ct. 2538, 2546, 120 L.Ed.2d 305 (1992); *United States v. O'Brien,* 391 U.S. 367, 376–77, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968). Thus, because Stann's actions contained both speech and non-speech elements, we evaluate the constitutionality of the injunction and contempt order under the test outlined in *O'Brien:*

> [A] government regulation is sufficiently justified if it is within the constitutional

power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restrictions on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

391 U.S. at 377, 88 S.Ct. at 1678; *United States v. Hayward,* 6 F.3d 1241, 1250 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1369, 128 L.Ed.2d 46 (1994). It is without question that Congress has the power to create uniform bankruptcy laws, and provide for their enforcement. U.S. Const. art I, § 8. Proper enforcement of the Bankruptcy Code would be seriously undermined if courts could not enjoin efforts at collecting discharged debts and punish those who ignored court orders. The injunction and contempt order in this case were unrelated to suppression of free expression, but were directed only at conduct that sought to frustrate the Discharge Order. Finally, the restriction on Stann's speech was no greater than necessary to prevent his pattern of harassment and coercion. Thus, the challenged injunction and contempt order pass constitutional muster.

However, even assuming *arguendo* that the injunction and contempt order issued by the bankruptcy court were directed at pure speech, we still do not find them violative of the First Amendment. When evaluating a content-neutral injunction—such as the one embodied in § 524 and the Discharge Order[7]—we ask "whether the challenged provisions of the injunction burden no more than necessary to serve a significant government interest." *Madsen v. Women's*

---

5. Stann also asks us to stay the contempt order pending resolution of this appeal. Given that we address the merits of his appeal at this time, his motion for a stay is denied as moot. In any event, we would decline Stann's request because of his failure to seek a stay before Judge Schmetterer in the first instance, and the absence of any explanation regarding this misstep. *See* Fed. R.Bankr.P. 8005.

6. Notwithstanding the significance of this issue and the complexity of First Amendment jurisprudence, the parties—combined—have seen fit to provide us less than ten pages of briefing and only one case citation.

7. We note that the injunction at issue is not content-based simply because it restricts only Stann's speech—if that were so then every injunction would be classified as content or viewpoint based. *Madsen v. Women's Health Center, Inc.,* —— U.S. ——, ——, 114 S.Ct. 2516, 2523, 129 L.Ed.2d 593 (1994). Here, Judge Schmetterer imposed the injunction (and found Stann in contempt) not because of the content of his message, but because of his repeated attempts at collecting the discharged debt.

*Health Center, Inc.,* —— U.S. ——, ——, 114 S.Ct. 2516, 2525, 129 L.Ed.2d 593 (1994). We discern two significant governmental interests implicated by Stann's conduct: the power of the courts to enforce and protect their judicial process, and the ability of the Bankruptcy Code to protect debtors. The former has long been recognized as significant component in the effective administration of justice, and can justify the fashioning of effective remedies that incidently implicate speech. *See Wood v. Georgia,* 370 U.S. 375, 383, 82 S.Ct. 1364, 1368, 8 L.Ed.2d 569 (1962); *cf. Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1071–1075, 111 S.Ct. 2720, 2742–2745, 115 L.Ed.2d 888 (1991) (discussing reduced First Amendment protection for lawyers involved in pending litigation). Likewise, protecting debtors from creditors' attempts at collecting prepetition debts is an essential component of the bankruptcy scheme. *In re Sechuan City, Inc.* 96 B.R. 37, 43 (Bankr.E.D.Pa.1989); *Tantilla v. Stonegate Sec. Servs., Ltd. (In re Stonegate Sec. Servs., Ltd.),* 56 B.R. 1014, 1019 (N.D.Ill. 1986) ("[W]hen a party violates § 362's automatic stay provision, he is harming not only the debtor, but the effectiveness of the bankruptcy court itself in fulfilling the role Congress designed for it."). The contempt order in this case was narrowly tailored to address these two concerns, and refrained from impeding any future speech by Stann. 184 B.R. at 316.[8] Considering the significant governmental interests at stake, and the pattern of harassing and contemptuous conduct engaged in by Stann, we believe that the contempt order did not run afoul of the First Amendment protection of free speech. *See In re Sechuan City,* 96 B.R. at 43–44 (rejecting First Amendment defense to contempt order issued under 11 U.S.C. § 362(a), where creditor placed signs at debtor's place of business with intent to coerce payment).[9]

The instant case is distinguishable from *In re Stonegate Sec. Servs.,* in which a bankruptcy court's fee sanction against a creditor and its president was reversed on First Amendment grounds. The creditor in that case parked a truck outside the debtor's business premises with the signs "Stonegate Auto Alarms does not pay supplier," "Stonegate Auto Alarms does not pay suppliers," and "Crime does not pay, Stonegate Auto Alarms the same way," on the front, side and

---

**8.** Because the contempt order did not restrict future speech by Stann, the appellant's citation to *Turner Advertising Co. v. National Serv. Corp. (In re National Serv. Corp.),* 742 F.2d 859 (5th Cir.1984) is unavailing. Although the sign at issue in *In re National Serv. Corp.* bore a strong resemblance to the one put up by Stann, the precise issue in that case was whether the bankruptcy court could issue a "prior restraint" against the display of the sign. *Id.* at 862. Prior restraints such as the one at issue in *In re National Serv. Corp.* bear a "heavy presumption" of unconstitutionality, and the restriction could not be justified in that case simply because the message was thought to be threatening to the debtor. *Id; see also Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419–20, 91 S.Ct. 1575, 1577–78, 29 L.Ed.2d 1 (1971) (striking down prior restraint on pamphleteer). In contrast, the contempt order in this case was not a prior restraint on Stann's speech, and the allegedly protected speech was coupled with harassing and coercive conduct by Stann.

**9.** Moreover, "not all speech is of equal First Amendment importance. It is speech on matters of public concern that is at the heart of the First Amendment's protection." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 758–59, 105 S.Ct. 2939, 2944–45, 86 L.Ed.2d 593 (1985) (Powell, J., plurality opinion) (citations, quotations, and footnotes omitted). However, matters of purely private concern, as well as commercial speech, are entitled to a lesser degree of protection. *Id.* at 758 n. 5, 759, 105 S.Ct. at 2945 n. 5, 2946. The bankruptcy court found, quite correctly, that Stann erected the signs in an effort to recover the prepetition debt owed by the Andruses. 184 B.R. at 314–15. His "public service announcements" were not directed at persons with prepetition debts who might be affected by the bankruptcy, but at those who intended to engage in business with the Andruses after the completion of the bankruptcy proceeding. The signs did not purport to challenge the wisdom of the bankruptcy laws, or promote Stann's views on policy matters affecting the public generally. Indeed, considering his contemporaneous harassing conduct and threatening statements to the Andruses, it is clear that— quite apart from implicating public concerns— this " 'was speech solely in the individual interest of the speaker.' " *In re Sechuan City, Inc.,* 96 B.R. 37, 43 (Bankr.E.D.Pa.1989) (quoting *Dun & Bradstreet,* 472 U.S. at 762, 105 S.Ct. at 2946); *see also Connick v. Myers,* 461 U.S. 138, 148, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983) (construing questionnaire that reflected employee's dissatisfaction with employment conditions at District Attorney's office as not implicating matters of public concern).

rear of the vehicle. On appeal, the district court held that absent any evidence the signs presented a "clear and present danger" of frustrating the bankruptcy reorganization, or that the creditor intended them to do so, the creditor and its president could not be punished for placing the signs on the truck. 56 B.R. at 1019–20. In so holding, the court expressly noted the lack of findings by the bankruptcy court as to the countervailing interests at stake or the actual intent of the creditor in erecting the signs. *Id.* at 1020. Indeed, because the creditor had caused the involuntary bankruptcy petition to be filed, it was unlikely that it intended the signs to frustrate the reorganization. *Id.* at 1020–21 n. 3. By contrast, the bankruptcy court in the instant matter heard evidence and specifically found that Stann's acts impeded the debtors' attempts at continuing their business, and were intended to coerce the Andruses into paying the discharged debt. 184 B.R. at 316. Moreover, Stann did not have a role in forcing Andrus into bankruptcy, and demonstrated great disdain for the rulings of bankruptcy court. *Id.* We believe these differences justify a different result in this case, and therefore we decline Stann's invitation to mechanically adopt the holding of *In re Stonegate Sec. Servs.*

### III. Conclusion

In sum, we believe that the contempt order and injunction satisfied the requirements of *O'Brien* and were therefore constitutional. Alternatively, even if these restrictions implicated pure speech, we find that they did not burden more speech than necessary to serve the significant government interests at risk. Accordingly, we affirm the contempt order of the bankruptcy court. It is so ordered.