**In the Matter of Gary Alvin STONEKING, Debtor.**

**Gary Alvin STONEKING, Plaintiff,**

**v.**

**William Mark HISTED, Jr., Everett E. Tackett and U.S. Machinery, Inc., Defendants.**

**Bankruptcy No. 94–6724–8B7.
Adversary No. 96–829.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

July 13, 1998.

---

Thomas Joel Chawk, Lakeland, FL, for Plaintiff.

Shirley C. Arcuri, Tampa, FL, for Defendants.

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for consideration following a hearing or Defendants', Everett E. Tackett and U.S. Machinery, Inc. (Tackett/U.S. Machinery), and William Mark Histed, Jr. (Histed), Motions to Dismiss Complaint to Hold Creditors in Contempt in Violation of Section 524(a) filed by the Debtor, Gary Alvin Stoneking (Stoneking). Each Motion identically asserts the Complaint fails to (1) state a cause of action against either Defendant and (2) allege any right to relief jointly, severally or in the alternative, or be brought upon the same transactions or occurrences or contain a question of law or fact common to all Defendants, as required by Fed.R.Bankr.P. 7020.

■ The allegations contained in this Complaint must be taken as true and viewed in a light most favorable to the Debtor for purposes of Histed's Motion to Dismiss. *E.g., Pleming v. Universal–Rundle Corp.,* 142 F.3d 1354 (11th Cir.1998); *In re Johannessen,* 76 F.3d 347 (11th Cir.1996). However, if the Debtor is unable to state a viable claim for relief under § 524(a), even upon amendment of the Complaint, Histed's Motion to Dismiss must be granted. *Johannessen, supra; In re Gulf Coast Orthopedic Center,* 207 B.R. 258, 261 (Bankr.M.D.Fla. 1997).

## I. HISTED'S MOTION TO DISMISS

Count I of the Complaint charged that Histed, an unsecured creditor in Stoneking's Chapter 7 case, willfully and maliciously violated the discharge injunction enunciated in § 524(a) of the Bankruptcy Code while acting as Editor of the local *Polk County Press* newspaper. Specifically, Count I alleges Histed published various articles about Stoneking with the intent to "harass the Debtor and embarrass him into paying" Histed's claim after it had been discharged by Order of this Court on October 19, 1994. The Debtor contends Histed, in the articles, labeled the Debtor a "deadbeat" and commented he was not entitled to the "fresh start" offered by the Bankruptcy Code. To the contrary, Histed seeks dismissal of the Complaint on the basis that the content of the articles does not evince an effort to collect a discharged debt but is, rather, immune from Stoneking's attack by virtue of the First Amendment's guarantee of freedom of the press.

### A. 11 U.S.C. § 524(a)

■ Section 524(a) governs the scope of the general discharge and includes an injunction against the commencement or continuation of any efforts to collect, recover or offset a discharged debt.[1] That section is construed broadly to insulate a debtor from personal liability[2] and includes informal actions to collect as well as judicial actions. H.R.Rep., No. 595, 95th Cong., 1st Sess. 364 (1977). Section 524(a) was designed to "ensure that once a debt is discharged, the debtor will not be pressured in any way to repay it." *Id.* Operation of § 524(a) is automatic as relates to post-discharge judgments and a violation of the injunction is not only sanctionable, but may carry the threat of

---

1. In that respect, the automatic nature of the discharge injunction may be likened to the automatic stay contained in § 362. Both forestall unauthorized collection efforts and promote the fundamental protections and fresh start afforded a debtor by the Bankruptcy Code, albeit the former during the course of the bankruptcy case and the latter following entry of the general discharge. *See* 11 U.S.C. §§ 362, 524, Notes of Committee on the Judiciary, Senate Report No. 95–989; *see also Owaski v. Jet Florida Sys., Inc.,* 883 F.2d 970, 972 (11th Cir.1989).

2. The right to foreclose on a lien survives bankruptcy notwithstanding the discharge and enforcement of *in rem* rights are not precluded. *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). Further, in a situation involving potential liability of a non-debtor third party, the discharge injunction does not prohibit the bringing or continuation of a suit against the debtor for the purpose of determining the debtor's liability in order to proceed against a third party. *E.g., In re Walker,* 927 F.2d 1138, 1142 (10th Cir.1991); *Jet Florida, supra,* Note 1 at 976.

punitive damages and attorneys' fees and costs. *E.g., In re Borowski,* 216 B.R. 922, 925 (Bankr.E.D.Mich.1998); *In re Latanowich,* 207 B.R. 326 (Bankr.D.Mass.1997).

■ The primary issue in any action to enforce the § 524(a) injunction is whether the debt is one which was discharged. *See* §§ 523(a) and 727(b). A debt is a liability on a claim as defined by §§ 101(4) and (11). *See Ohio v. Kovacs,* 469 U.S. 274, 278, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). Here, it is undisputed Stoneking scheduled Histed as an unsecured creditor to whom an estimated $100,000 business debt was owing at the time the petition was filed. There is no dispute that Histed was listed on the mailing matrix and was one of those listed creditors to whom a copy of Stoneking's Discharge was sent. Fed.R.Bankr.P. 4004(g); *accord, Latanowich, supra* at 334. Moreover, at no time did Histed attempt to have the debt excepted from Stoneking's general discharge.[3] No one disputes Histed had a prepetition claim against Stoneking which was discharged by virtue of the Order entered October 19, 1994. For purposes of § 524(a) then, Histed is considered a creditor whose actions are circumscribed by the discharge injunction whereby no debt collection efforts against the Debtor are permitted following entry of the discharge.[4]

### B. First Amendment

■ In circumstances such as these, however, courts must also consider the distinction between conduct which coerces payment of a discharged debt, and thereby violates the discharge injunction, and speech protected by the First Amendment. In support of his contention that Histed violated the § 524(a) injunction, Stoneking suggests the Court rely on several cases which, while balancing the purpose of § 524(a) with the First Amendment guarantee of free speech, are inapposite to these facts which explicitly deal with the issue of freedom of the press. For example, Stoneking cites *In re Andrus* wherein a bankruptcy court found signs erected by a creditor in his own yard and near a debtor's house were not protected by the First Amendment and constituted violation of the § 524(a) injunction.[5] 184 B.R. 311 (Bankr.N.D.Ill.), *aff'd* 189 B.R. 413 (N.D.Ill. 1995). Similarly, in *In re Stonegate Security Services, Ltd.,* a creditor's actions in (1) posting a sign publicly accosting a debtor for payment of a discharged debt and (2) making harassing telephone phone calls violated the § 362 automatic stay and warranted imposition of sanctions. 56 B.R. 1014, 1018–1020 (N.D.Ill.1986).

In light of the First Amendment's prohibition against any law abridging freedom of speech or of the press, the United States Supreme Court has consistently refused to circumscribe the content of newspaper articles. In this instance, it is patently clear the articles published by Histed in the *Polk County Press* fall squarely within the definition of "the press" for First Amendment purposes.[6] As such, the content of the articles is protected by the constitutional guarantee of freedom of the press.

---

**3.** The creditors were notified not to file claims in this no asset case and, accordingly, Histed did not file any claim.

**4.** In this Chapter 7 case, Stoneking received his discharge after all the requirements of 11 U.S.C. § 727 were met. By comparison, under Chapter 13, a discharge is entered following completion of payments under the Plan pursuant to 11 U.S.C. § 1328.

**5.** The first sign read "Gene Andrus, Where's my money?" and the second "Gene Andrus went bankrupt! He didn't pay his bills. He is a deadbeat! This is a public service announcement." *Andrus,* 189 B.R. at 415. *Compare In re Nat. Service Corp.,* 742 F.2d 859 (5th Cir.1984).

**6.** "Press" has been broadly defined as "the giving publicly to one's sentiments and opinions through the medium of printing." *Black's Law Dictionary,* 5th ed. (1979). At the time of enactment of the First Amendment, the term "press" referred to "what was then the sole means of broad dissemination of ideas and news, [and] would be used to describe the freedom to congregate with a large, unseen audience." *First Nat. Bank of Boston v. Bellotti,* 435 U.S. 765, 800, n. 5, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). Indeed, the courts have been reluctant to circumscribe the meaning of "press" which has been found to "comprehend every sort of publication which affords a vehicle of information and opinion." *Lovell v. City of Griffin, Ga.,* 303 U.S. 444, 452, 58 S.Ct. 666, 82 L.Ed. 949 (1938).

In the landmark case of *Near v. Minnesota*, the Supreme Court found the chief purpose of the guarantee of liberty of the press is to prevent prior restraints upon publication and censorship of the press, emphasizing "[t]he fact that the liberty of the press may be abused by miscreant purveyors of scandal does not make any less the necessity the immunity of the press...." 283 U.S. 697, 715, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); *see generally*, Friendly, Fred W., *Minnesota Rag: The Dramatic Story of the Landmark Supreme Court Case That Gave New Meaning to Freedom of the Press*, Random House, 1st ed. (1981); Emerson, Thomas I., *The System of Freedom of Expression*, Vintage Books (1971). More than half a century later, the Supreme Court reiterated that sentiment, stating:

> [T]he Court has expressed sensitivity as to whether a restriction or requirement constituted the compulsion exerted by government on a newspaper to print that which it would not otherwise print. The clear implication has been that any such compulsion to publish that which " 'reason' tells them should not be published" is unconstitutional. A responsible press is an undoubtedly desirable goal, but press responsibility is not mandated by the Constitution and like many other virtues it cannot be legislated.

*Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 257, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974); *see also, Gulf Coast Orthopedic Center, supra* (complaint seeking mandatory injunction compelling newspaper to accept debtor's advertisements for publication cannot withstand challenge under First Amendment's freedom of the press). This Court finds any attempt by a debtor to use the injunctive powers of § 524(a) against the press fall under the same constitutional considerations as where a permanent injunction is sought to compel the press. However, the evidence herein does not lead us in such a direction.

Rather than seeking to gag the press, a party aggrieved by the unfavorable content of a publication may pursue recourse through the torts of libel, defamation or slander. The Supreme Court examined at length the "proper accommodation" between the law of defamation and freedom of the press in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 325, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). The predominant issue in *Gertz* was "whether a newspaper or broadcaster that publishes defamatory falsehoods about an individual who is neither a public official nor a public figure may claim a constitutional privilege against liability for injury inflicted by those statements." *Id.* at 332, 94 S.Ct. 2997.

The Court recognized several remedies available to defamed individuals, the first being self-help, whereby an individual may take advantage of opportunities to respond or correct the erroneous statements in order to minimize the adverse impact. *Id.* at 344, 94 S.Ct. 2997. The second remedy is state law itself, which defines the standard of liability of the press for defamatory statements about a private individual and provides compensatory recourse. *Id.* at 347, 94 S.Ct. 2997. Given the availability of the alternative remedies, the Court clarified that freedom of the press extends to unintentional erroneous statements of fact made about private individuals, for to hold otherwise would "[run] the risk of inducing a cautious and restrictive exercise of the constitutionally guaranteed [freedom of the press]." *Id.* at 340, 94 S.Ct. 2997; *see also Time, Inc. v. Hill*, 385 U.S. 374, 389–91, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967) (comparing calculated falsehoods susceptible to sanctions with innocent or negligent misstatements).

In this case, the Court finds the articles in question chronicle the demise of a plastic drinking cup manufacturing company co-founded by Stoneking, Divine Products, Inc., over the course of approximately a one-year period. It is significant to note the articles began prior to the Debtor's bankruptcy petition, let alone his Chapter 7 discharge. The articles describe the progression of a newsworthy event in Polk County, Florida; namely, the unsuccessful investment by many locals in the Divine Products business which was marketed to investors by Stoneking for its religious underpinnings. Also discussed is Stoneking's 51% ownership interest which he allegedly obtained without contributing to the company's capitalization whatsoever, and

the subsequent bankruptcies of Divine Products, Inc. and Stoneking personally. The articles also highlight a purported sale of the company or property for $10.00 just prior to its bankruptcy.

Although the general tenor and theme of the articles, while admittedly not very favorable to the Debtor or Divine Products, do not offer evidence of Histed's effort to seek collection on the debt after Stoneking received his discharge. Nor has Stoneking identified any intentional misstatements of fact contained therein. Indeed, the record provides no support for the allegation that by publishing the articles, Histed sought to collect on a discharged debt in derogation of the discharge injunction contained in § 524(a). Moreover, under these facts, Stoneking's recourse against Histed for any alleged defamatory comments is through state tort law.

Given the above finding that the articles published by Histed are protected by the First Amendment's freedom of the press and are not violative of the § 524(a) injunction, it is unnecessary for this Court to address Histed's argument regarding insufficiency of the Complaint under Fed. R.Bankr.P. 7020. In this Court's view, far more definitive evidence must exist of a creditor's efforts to obtain payment for a discharge debt or to thwart a debtor's fresh start for a bankruptcy court to consider the imposition of sanctions against the press under § 524(a).[7] Assuming such facts were alleged, the constitutional analysis would be much more complex than as is contemplated here. Therefore, Histed's Motion to Dismiss Count I of the Adversary Complaint should be granted with prejudice for failure to state a bankruptcy cause of action.

## II. TACKETT/U.S. MACHINERY'S MOTION TO DISMISS

■ The same presumptions of correctness are applicable to Tackett/U.S. Machinery's Motion to Dismiss, which pertains Counts II and III of the Complaint. Therein, the Debtor sought a finding of contempt based on the contention that Tackett "under the guise of his alter ego," U.S. Machinery, violated the § 524(a) injunction by filing an action in state court against Stoneking and others after Stoneking received his discharge. Stoneking also alleged Tackett violated the permanent injunction by telephoning Stoneking's co-worker at his place of employment to state Stoneking had "screwed him out of money—damaged his machinery."

As to the first contention, the state court action, styled *U.S. Machinery, Inc. v. Divine Products, Inc., et al.*, Case No. GC–G–95–2456, Circuit Court in and for Polk County, Florida, was brought by the entity which purchased real property of Divine Products, Inc. from the Chapter 7 Trustee. The case was filed in order to quiet title, given Stoneking and Hurst's prepetition conveyance of that property to unrelated third parties for the sum of $10.00. While the state court Complaint contained counts for Quiet Title, Ejectment and Fraudulent Transfer, it was devoid of allegations which may reasonably be construed as efforts to obtain payment from Stoneking of the discharged debt. Indeed, paragraph 3 of the state court Complaint's common allegations contained the following caveat: "No monetary relief is sought against Mr. Stoneking in these proceedings. Mr. Stoneking is included herein solely for the purpose of eliminating any claim which he may make to the Land ... either actual or implied, real or alleged, for no other purpose."

Notwithstanding, Stoneking claims the state court lawsuit has required him to file a response and appear for a deposition, thus causing him to incur attorneys' fees, costs and damages. However, Stoneking offers no basis for the conclusion those ancillary consequences of the state court lawsuit somehow rise to the level of violation of the discharge injunction and require imposition of sanctions pursuant to § 524(a), nor is any basis for sanctions under these facts apparent to the Court.

■ Although, as discussed above, the general discharge releases a debtor from a legal obligation to pay a debt and is entered to promote the purpose of offering honest debtors a "fresh start," it does not insulate a debtor from all actions against him. *E.g., In*

---

7. The *Andrus* case, *supra*, may express the symbolization of such evidence.

*re Hendrix,* 986 F.2d 195 (7th Cir.1993) (§ 524(a) injunction does not extend to action only nominally against debtor, where specific relief is sought only against insured); *In re Walker,* 927 F.2d 1138 (10th Cir.1991) (potential for debtor's incurring legal expenses in defending against creditor's state court action brought to regain revoked real estate license did not constitute sufficient prejudice to debtor's fresh start to award § 524(a) sanctions); *see also,* Gussett, *Lucrative State Law Remedies for Violations of Stay and Discharge Injunction,* 16 Am Bankr. Inst. J. 22 (Mar. 1997). Moreover, within the context of both the § 362 automatic stay and the § 524(a) discharge injunction, courts have rejected the argument that modification of either would unduly prejudice the debtor by causing him to incur additional legal expenses. *E.g., Walker, supra* at 1143; *In re Harris,* 85 B.R. 858, 860 (Bankr.D.Colo.1988) ("[w]hile the cost of defending in a civil action has been given serious consideration by bankruptcy courts, no case has found the cost of defending, by itself, to be 'great prejudice' as to bar modification of the [§ 362 stay].") (quoting *In re Phillips,* 40 B.R. 194, 197 (Bankr.Colo.1984)).

Moreover, as noted in *Walker,* the Debtor has options which would serve to minimize his potential litigation costs, including stipulating to certain facts or choosing not to defend the case and allowing a default judgment to be entered. 85 B.R. at 860. In the final analysis, it is clear Tackett/U.S. Machinery's efforts to obtain, through state court proceedings, clear title to the Divine Property, Inc. land purchased from that corporations's Chapter 7 Trustee does not violate the Order of Discharge entered in Stoneking's personal bankruptcy case.

■ Lastly, as to Stoneking's alternative basis for sanctions against Tackett/U.S. Machinery, the record offers no facts to support the contention that Tackett violated the § 524(a) injunction and sought repayment of a discharged debt when he allegedly telephoned Stoneking's co-worker and complained about Stoneking's treatment of him prepetition. This Court is satisfied that Counts II and III, as pled, are insufficient to state a cause of action and amendment, if

any, would prove futile. Therefore, the Motion to Dismiss filed by Tackett/U.S. Machinery is similarly well-taken and Counts II and III of the Adversary Complaint should be dismissed with prejudice.

Accordingly it is

ORDERED, ADJUDGED AND DE-CREED the Defendant's, William Mark Histed, Jr., Motion to Dismiss Count I of the above-captioned Adversary Complaint be and the same is hereby, granted and Count I is dismissed with prejudice. It is further

ORDERED, ADJUDGED AND DE-CREED the Defendants', Everett E. Tackett and U.S. Machinery, Inc., Motion to Dismiss Counts II and III of the above-captioned Adversary Complaint be and the same is hereby, granted and Counts II and III are dismissed with prejudice.

Nothing herein shall preclude the Debtor's rights as to any cause of action founded in Defamation, Libel or Slander, if such should exist. A separate Final Judgment shall be entered in accordance with the foregoing.